## STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Plaintiff-Appellee *v*. JACK BAILEY, Defendant-Appellant, and LINDA KUSTAD, Defendant

### NO. 5806

AUGUST 23, 1977

RICHARDSON, C.J., OGATA, MENOR AND KIDWELL, JJ., and CIRCUIT JUDGE LUM IN PLACE OF KOBAYASHI, J., DISQUALIFIED

OPINION OF THE COURT BY KIDWELL, J.

This is an appeal from a summary judgment entered in an action for a declaratory judgment with respect to the coverage of an insurance policy issued by Plaintiff-Appellee (the Insurer), by which Defendant-Appellant (the Insured) was insured against liability for injuries arising from the operation of a newly acquired automobile. The question on which declaratory relief was sought was whether the policy covered the Insured's liability for injuries arising from his operation of a motorcycle purchased about two weeks before the accident. Summary judgment was entered for the Insurer, declaring that the motorcycle was not an automobile as defined in the policy. We affirm.

The record does not contain a copy of the policy issued to the Insured, and we are shown only a sample copy of the

printed portion of the policy, without any indication of the manner in which the policy form was completed. The policy form is divided into four sections, entitled as follows:

Section I
    Liability and Medical Payments Insuring Agreements
Section II
    Physical Damage Insuring Agreements
Section III
    Uninsured Motor Vehicle Coverage Insuring Agreements
Section IV
    Automobile Death Indemnity, Dismemberment and Loss of Sight and Total Disability Insuring Agreements.

Immediately before Section I, there appears in parentheses: "NOTE: The words in *bold face italic*[1] type are defined under Definitions within each Section."

In Section I, under Coverages A and B, the Insurer agrees "[t]o pay on behalf of the *insured* all sums which the *insured* shall become legally obligated to pay as *damages* . . . caused by accident arising out of the ownership, maintenance or use, including loading or unloading of the *owned motor vehicle* . . . ." Under Coverages C and M, the Insurer agrees to pay medical expenses of the Insured caused by accident "while *occupying* the *owned motor vehicle,* or . . . through being struck by a *highway vehicle* while not *occupying* a land motor vehicle." Within Section I, under the heading "DEFINITIONS — SECTION I", are definitions of the italicized terms in Section I, including the following:

    Automobile — means a four wheel land motor vehicle designed for use principally upon public roads, but "automobile" shall not include a *midget automobile,* nor any vehicle while located for use as a residence or premises.
        *       *       *       *

---

[1] Words underlined in quotations from the policy are printed in the policy in bold face italic type.

Highway Vehicle — means a land motor vehicle or trailer other than

(1) a vehicle operated on rails or crawler-treads, or

(2) a farm type tractor or equipment designed for use principally off public roads, while not upon public roads.

\*    \*    \*    \*

Midget Automobile — means a land motor vehicle of the type commonly referred to as "midget automobile", "kart", "go-kart", "speedmobile" or by a comparable name, whether commercially built or otherwise.

\*    \*    \*    \*

Newly Acquired Automobile — means an *automobile*, ownership of which is acquired by the named insured or his spouse, if a *resident* of the same houseold, if

(1) it replaces an *automobile* owned by either and covered by this policy, or the company insures all *automobiles* owned by the named insured and such spouse on the date of its delivery, and

(2) PROVIDED THAT NO INSURANCE SHALL BE APPLICABLE TO SUCH *NEWLY ACQUIRED AUTOMOBILE* UNLESS AS A CONDITION PRE-CEDENT THE NAMED INSURED WITHIN 30 DAYS FOLLOWING SUCH DELIVERY DATE APPLIES TO THE COMPANY FOR INSURANCE ON SUCH *NEWLY ACQUIRED AUTOMOBILE*.

If more than one policy issued by the company could be applied to such *automobile* the named insured shall elect which policy shall apply. The named insured shall pay any additional premium required because of the application of the insurance to such *newly acquired automobile*.

Non-Owned Automobile — means an *automobile, trailer* or detachable living quarters unit, not

(1) owned by,

(2) registered in the name of, or

(3) furnished or available for the frequent or regular use of

the named insured, his spouse, or any relative of either *residing* in the same household, other than a *temporary substitute automobile*.

\*   \*   \*   \*

Owned Motor Vehicle — means the motor vehicle or trailer described in the declarations, and includes a *temporary substitute automobile*, a *newly acquired automobile*, and, provided the described motor vehicle is not classified as "commercial", under coverages A, B, C and M, a *trailer* (as defined herein) or a detachable living quarters unit owned by the named insured or his spouse, if a *resident* of the same household.

\*   \*   \*   \*

Private Passenger Automobile — means an *automobile* of the private passenger type designed solely for the transportation of *persons* and their personal luggage, and includes station wagons.

\*   \*   \*   \*

Temporary Substitute Automobile — means an *automobile* not owned by the named insured or his spouse while temporarily used with the permission of the owner as a substitute for the described motor vehicle when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction.

\*   \*   \*   \*

Trailer — means a trailer or a semitrailer not so described if designed for use with a *private passenger automobile* and if not

(1) a passenger trailer.
(2) a trailer used for business purposes with other than a *private passenger automobile,* or
(3) a trailer used as premises for office, store or display purposes.

Utility Automobile — means an *automobile* of the pick-up body, sedan delivery or panel type with a load capacity of 1500 pounds or less.

In Section II, under Coverages D and F, the Insurer agrees to pay for certain losses to the "Owned Motor Vehicle". All of the foregoing definitions in Section I are incorporated by reference, except that an owned motor vehicle does not include an undescribed trailer or detachable living quarters.

In Section III, under Coverage U, the Insurer agrees to pay sums which the Insured shall be entitled to recover from the owner or operator of an *"uninsured motor vehicle"*. An uninsured motor vehicle is defined, with certain exceptions, as a "land motor vehicle" with respect to which certain insurance coverage is not in effect or which is a "hit-and-run motor vehicle".

In Section IV, under Coverages S and T, the Insurer agrees to pay amounts stated as applicable in the declarations with respect to death, scheduled personal injuries or disability suffered by the Insured "while *occupying* or through being struck by an *automobile"*. Of the foregoing definitions in Section I, only the definitions of Private Passenger Automobile and Utility Automobile are incorporated into Section IV by reference, and it is provided that, under Section IV:

Automobile — means a land motor vehicle, trailer, or semitrailer not operated on rails or crawler-treads, but does not mean:

(1) A farm type tractor or other equipment designed for use principally off public roads, except while actually upon public roads, or

(2) a land motor vehicle or trailer while located for use as a residence or premises and not as a vehicle.

Commercial Automobile — means any land motor vehicle while used in the insured's business or occupation other than

(1) a *private passenger automobile,*

(2) a school bus or

(3) an owned *utility automobile* not used for wholesale or retail delivery.

The record does not disclose what coverages were provided by the policy or what motor vehicle was described in the

declarations, since only the standard printed form is provided. In view of the fact that the controversy between the parties involves the coverage of the Insured's liability arising out of the accident, we shall assume that Coverages A and B were in effect under Section I. Other coverages would be in effect only if the policy was completed to so state, and we may not assume that this was done or that any premium was charged for these coverages. There is no contention that any representations were made to the Insured with respect to the meaning or coverage of the policy, although the Insured filed an affidavit in opposition to the motion for summary judgment in which he stated that he "believed" that upon purchasing a new and additional motor vehicle he would be automatically covered under the terms of the policy. The grounds of this belief are not stated in the Insured's affidavit, except that the affidavit avers that the policy was misleading and did mislead him, "insofar as it purports to define automobile and not motor vehicle." However, the Insured's affidavit states that the Insured only "skimmed through" the policy upon its receipt.

It is quite apparent, when those provisions of the policy which are before us are read, that a newly acquired automobile, to which Coverages A and B are automatically extended by the definition of owned motor vehicle in Section I, can include only an automobile as defined in Section I. As so defined, the term includes only a four wheel vehicle and therefore excludes the Insured's motorcycle which was involved in the accident. The Insured contends that the answer is not that simple and that the terms "automobile" and "motor vehicle" are employed so interchangeably in the policy as to create an ambiguity. It is argued that, depending on how this ambiguity is resolved, the term "newly acquired automobile" may be read as synonymous with "newly acquired motor vehicle", which is broad enough to embrace the motorcycle. We are asked to apply the principle expressed in *Masaki v. Columbia Casualty Company*, 48 Haw. 136, 395 P.2d 927 (1964), that ambiguities in an insurance policy shall be resolved against the insurer.

However, mere complexity does not create ambiguity.

Nor is this policy so complex that it should mislead a reasonably literate person who takes the trouble to read it, with respect to the coverage of a newly acquired automobile. Coverages A and B, as set forth in Section I, extend only to "the owned motor vehicle". When the policy was issued, we must assume, a motor vehicle was described in the declaration. If the Insured had looked no further than at the description of Coverages A and B and at the declarations, he would have had no tenable ground for believing that the policy covered any other vehicle. In order to find an extension of these coverages to a newly acquired vehicle, it is necessary to read the definition of "owned motor vehicle" contained in Section I, which is repeated in all relevant parts in Section II and appears nowhere else in the policy except where incorporated by reference. It is only by reason of the fact that a newly acquired *automobile* is included within the meaning of owned motor vehicle that the coverage is extended to any vehicle other than that described in the declarations. Had "automobile" not been defined in Section I, the undefined term would not, in its commonly accepted meaning, have included a motorcycle. The definition in Section I, to which the Insured's attention was directed by the note appearing just before Section I, defines the term so as to include only a four-wheel vehicle and thereby clearly exclude a motorcycle.

Had the Insured's eye fallen by chance on the definition of owned automobile contained in Section II, which is the only source besides the definition of the term in Section I which would support a belief that a newly acquired vehicle would be covered, the same process and result would have followed. The Insured could not have read any other portion of the policy in support or amplification of a belief that a newly acquired vehicle would be covered by the policy without first having arrived at that belief by reading the definition of owned motor vehicle and having thereby been apprised of the fact that such coverage is limited to a newly acquired automobile.

While we are satisfied that the foregoing analysis requires affirmance of the judgment in this case, we note that we are

supported in our conclusion by the great weight of the decisions.[2]

The judgment is affirmed.

*Dennis M. Daugherty (Cowan & Frey* of counsel) for Defendant-Appellant.

*James E. T. Koshiba (Kobayashi, Koshiba & Watanabe* of counsel) for Plaintiff-Appellee.

---

[2] Where coverage is limited to an accident involving an "automobile", which term, in the section creating such coverage, is undefined or is defined so as to exclude a motorcycle, the fact that the term is defined for the purposes of other coverages so as to include a motorcycle or the fact that other coverages extend to a motorcycle for other reasons, does not extend the initial coverage to an accident involving a motorcycle. Canal Insurance Co. v. Stidham, 281 Ala. 493, 205 So.2d 516 (1967); Guillory v. Deshotel, 251 So.2d 91 (La. App. 1971). The undefined term "automobile" in an insurance policy has been held to not include a motorcycle. Moore v. Life & Casualty Ins. Co., 162 Tenn. 682, 40 S.W.2d 403 (1931), Landwehr v. Continental Life Ins. Co., 159 Md. 207, 150 A. 732 (1930); Neighbors v. Life & Casualty Ins. Co., 182 Ark. 356, 31 S.W.2d 418 (1930); Bullard v. Life & Casualty Ins. Co., 49 Ga. App. 27, 174 S.E. 256 (1934); Deardorff v. Continental Life Ins. Co., 301 Pa. 179, 151 A. 814 (1930); Mittelsteadt v. Bovec, 9 Wis. 2d 44, 100 N.W.2d 376 (1960); Lightner v. Farmers Ins. Exchange, 274 Cal. App.2d 928, 79 Cal. Rptr. 526 (1969). On the other hand, where the issue is the coverage of a policy clause which affords coverage for injuries arising from accidents with uninsured automobiles, the term is most often held to include motorcycles, usually in view of uninsured motorist statutes which require such coverage. Annot., 65 ALR 3d 851 (1975).