STURLA, INC., fka Barwick Pacific Carpet Company, dba Medallion Carpets, Plaintiff-Appellant, *v.* FIREMAN'S FUND INSURANCE COMPANY, a foreign corporation, doing business in Hawaii, Defendant-Appellee

NO. 9033

(CIVIL NO. 62072)

JUNE 15, 1984

·LUM, C.J., NAKAMURA, AND PADGETT, JJ., AND INTERMEDIATE APPELLATE COURT CHIEF JUDGE BURNS, IN PLACE OF HAYASHI, J., RECUSED, AND INTERMEDIATE APPELLATE COURT ASSOCIATE JUDGE HEEN, IN PLACE OF WAKATSUKI, J., DISQUALIFIED

OPINION OF THE COURT BY NAKAMURA, J.

The question presented for our resolution by this appeal from the Circuit Court of the First Circuit is whether a comprehensive general liability policy issued to a carpet manufacturer by Fireman's Fund Insurance Company covered damages resulting from the rapid fading of carpet after its delivery and installation in a condominium-hotel project on Kauai. The seller of the allegedly defective product, Sturla, Inc., who was an "insured" by virtue of a Vendor's Endorsement to the policy, argues the insurer was obligated to defend the suits brought by the dissatisfied developer of the project and owners of condominium units therein and to pay all sums assessed as damages. But like the circuit court, we are convinced the policy did not provide the protection sought by the insured and the insurer had no duty to undertake the defense of the suits or to indemnify the insured in this situation.

I.

Sturla, a distributor of carpet products manufactured by E. T. Barwick Industries, Inc.,[1] furnished the carpeting for Phase III

---

[1] The manufacturer, E. T. Barwick Industries, Inc., has since been declared a bankrupt corporation.

of the Kiahuna Beach and Tennis Resort development and the replacement carpeting for Phase II of the development. Shortly after the carpet had been delivered and installed, the developer and owners of condominium units observed uneven and excessive fading in the floor covering. Claiming it was not of merchantable quality and unfit for its intended purpose, they demanded of the seller that the cause of the apparent imperfection be investigated and that the faded carpet be replaced. Attributing the unanticipated discoloration to atmospheric conditions prevailing in the Poipu area, Stürla denied the product it sold was defective and took no steps to supply new carpeting.

Stymied by the disavowal of liability, the developer and condominium owners brought legal actions in the Circuit Court of the Fifth Circuit to enforce their claims against Sturla as well as the manufacturer and the installer, seeking the cost of replacing the purportedly defective product, "consequential damages, and interest on the damages."[2] When the defense of the suits was tendered to Fireman's Fund, it acknowledged Sturla was insured pursuant to a Vendor's Endorsement to the policy written for Barwick, but denied the policy offered protection for either manufacturer or vendor in this instance. The insurer stood on several "exclusions" from coverage and the definition of "property damage" set forth in the policy in turning down the request for it to assume the defense of the damage suits.[3]

---

[2] The suits were filed in the Circuit Court of the Fifth Circuit and entitled Civil No. 2198, Kiahuna Beach Houses, Ltd. v. Lloyd Bond, dba Lloyd Bond's Carpeting, Barwick Pacific Carpet Company, dba Medallion Carpets, The Barwick Corporation, E. T. Barwick, Inc., and John Does 1-10; and Civil No. 2212, Moana/Kauai Corporation v. Barwick Pacific Carpet Company, dba Medallion Carpets, The Barwick Corporation, E. T. Barwick Industries, Inc., and John Does 1-10.

[3] The communication from Fireman's Fund to Sturla's attorney stated in part: You are correct in stating that there is a Vendor's Endorsement Form G-114 attached to the captioned policy issued to E. T. Barwick Industries, Inc., however, this endorsement applies only to the extent that there is coverage under the captioned policy issued to E. T. Barwick. The policy in question provides Comprehensive General Liability insurance under Form 105040, copy attached, and we call to your attention Exclusions (n), (o) and (p). We are also attaching a specimen of the basic policy which provides the definition. We refer you to the definition of "property damage" which is defined as "injury to or destruction of *tangible* property ____ [sic].

Sturla countered with the instant suit, seeking "a declaration of coverage ... and a duty to defend" as well as "relief derivative thereto" from the Circuit Court of the First Circuit. By agreement of the parties the case was subsequently submitted for decision on the basis of evidence obtained during the discovery phases of the case at hand and of the suits brought against Sturla in the Circuit Court of the Fifth Circuit and on the legal memoranda prepared by counsel. The trial court after due consideration of the evidence and written argument made findings and reached conclusions favoring the position of the insurer.[4] Sturla's timely appeal to this court followed the entry of judgment for Fireman's Fund.

---

In reviewing the Complaint, it is our interpretation that it is based on damages claimed for allegations of the insured's product being defective with one count alleging consequential damages of an intangible nature. It is, therefore, our position that the captioned policy issued by Fireman's Fund Insurance Company would not provide coverage for your client nor would it provide coverage for the named insured, E. T. Barwick Industries, Inc.

[4] The following were the primary conclusions reached by the court below:

5. From the coverage provisions of the policy it is not enough that the product itself failed or was inadequate, there must have been damage to something or someone other than the product itself for liability coverage to exist.

6. In addition, for there to be coverage for property damage of another the property damage must be tangible.

7. The claims of Kiahuna are not for tangible property damage caused to other property; the claims of Kiahuna are for a failure of the product itself.

8. The claims of Kiahuna and Moana/Kauai are not covered by the Fireman's Fund comprehensive general liability policy.

9. Further, exclusion (n) specifically excludes coverage to property damage to the named insured's product arising out of the product or a part thereof.

10. The claims brought by Sturla, arising out of the claims of Kiahuna and Moana/Kauai, are excluded from coverage as they specifically refer to damage to E. T. Barwick carpet which arose out of a failure of the product itself.

11. At the time of the initial tender and refusal by Fireman's Fund to defend and provide coverage there was no potential of coverage under the Fireman's Fund comprehensive general liability policy.

12. Discovery conducted subsequent to the initial refusal of coverage and defense did not develop any claims potentially covered under the Fireman's Fund comprehensive general liability policy.

13. Fireman's Fund correctly refused to provide coverage to Sturla for the claims for excessive carpet fading brought by Kiahuna and Moana/Kauai.

14. Fireman's Fund did not breach its duty to defend Sturla against the claims for excessive carpet fading brought by Kiahuna and Moana/Kauai.

## II.

### A.

Our consideration of the issue before us begins as it must with the relevant provisions of the insurance policy. And since allegations of damage to property constitute the gravamen of the suits for which the defense was tendered and declined, our analysis starts with an examination of the policy provisions related thereto. We note at the outset that the insuring clause states Fireman's Fund

> will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
>
> . . . .
>
> B. property damage
>
> to which this insurance applies, caused by an occurrence, and ... [Fireman's Fund] shall have the right and duty to defend any suit against the insured seeking damages on account of such ... property damage, even if any of the allegations of the suit are groundless, false or fraudulent . . . .

"Property damage" to which the insurance applies is defined by the policy as:

> (1) physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom, or (2) loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an occurrence during the policy period . . . .

Read in conjunction with the definition above, the insuring clause gives an appearance of protecting the insured against property damage claims in the broadest terms. The coverage, however, is for "property damage to which this insurance applies," and it does not apply:

> (a) to liability assumed by the insured under any contract or agreement except an incidental contract; but this exclusion does not apply to a warranty of fitness or quality of the named insured's products or a warranty that work performed by or on

behalf of the named insured will be done in a workmanlike manner;

. . . .

(m) to loss of use of tangible property which has not been physically injured or destroyed resulting from
    (1) a delay in or lack of performance by or on behalf of the named insured of any contract or agreement, or
    (2) the failure of the named insured's products or work performed by or on behalf of the named insured to meet the level of performance, quality, fitness or durability warranted or represented by the named insured;
but this exclusion does not apply to loss of use of other tangible property resulting from the sudden and accidental physical injury to or destruction of the named insured's products or work performed by or on behalf of the named insured after such products or work have been put to use by any person or organization other than an insured;
(n) to property damage to the named insured's products arising out of such products or any part of such products;
(o) to property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith;
(p) to damages claimed for the withdrawal, inspection, repair, replacement, or loss of use of the named insured's products or work completed by or for the named insured or of any property of which such products or work form a part, if such products, work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein.

Exclusion clauses like the above serve "to restrict and shape the coverage otherwise afforded." *Weedo v. Stone-E-Brick, Inc.,* 81 N.J. 233, 237, 405 A.2d 788, 790 (1979). In the situation confronting us, we think Exclusions (m), (n), (o), and (p)[5] were clearly meant to negate coverage for the contractual liability of the insured "as a

---

[5] These clauses are sometimes referred to as "business risk" exclusions. *See* Weedo v. Stone-E-Brick, Inc., 81 N.J. at 243-46, 405 A.2d at 793-94.

source of goods or services . . . to make good on products or work which is defective or otherwise unsuitable because it is lacking in some capacity." Henderson, *Insurance Protection for Products Liability and Completed Operations – What Every Lawyer Should Know*, 50 Neb. L. Rev. 415, 441 (1971).

But Exclusion (a), which specifies that the insurance does not apply "to liability assumed by an insured under any contract or agreement except an incidental contract," further provides that it "does not apply to a warranty of fitness or quality of the named insured's products or a warranty that work performed by or on behalf of the named insured will be done in a workmanlike manner." Standing alone, the proviso appears repugnant to the other provisions excluding the contractual liability of the seller of a product that may be defective. Still, we are not convinced an ambiguity that should be resolved in favor of coverage exists here; for when the proviso is read in conjunction with the relevant exclusion clauses, we can only conclude the claims made against Sturla were not covered by the policy issued to Barwick.

### B.

Because insurance policies are contracts of adhesion and are premised on standard forms prepared by the insurer's attorneys, we have long subscribed to the principle that they "must be construed liberally in favor of the insured and the ambiguities resolved against the insurer. See *Alexander v. Home Ins. Co.*, 27 Haw. 326, 328." *Masaki v. Columbia Casualty Co.*, 48 Haw. 136, 141, 395 P.2d 927, 929 (1964); *see also State Farm Mutual Automobile Insurance Co. v. Bailey*, 58 Haw. 284, 289, 568 P.2d 1185, 1188 (1977). Put another way, the rule is that policies are to be construed in accord with the reasonable expectations of a layperson. *U. S. Fire Insurance Co. v. Colver*, 600 P.2d 1, 3 (Alaska 1979).

The rule, however, is not for application whenever insurer and insured "simply disagree over the interpretation" of the terms of a policy and there is an assertion of ambiguity. *Id.* Nor does mere complexity "create [an] ambiguity" calling for its use. *State Farm Mutual Automobile Insurance Co. v. Bailey, supra.* "Rather, ambiguity is found to exist [and the rule is followed] 'only when the contract

taken as a whole, is reasonably subject to differing interpretation.' *Modern Construction, Inc. v. Barce, Inc.,* 556 P.2d 528, 529 (Alaska 1976)." *U. S. Fire Insurance Co. v. Colver, supra.* And what we are committed to enforce are "[t]he objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts." Keeton, *Insurance Law Rights at Variance With Policy Provisions,* 83 Harv. L. Rev. 961, 967 (1970).

## C.

But the contract here, read as a whole, is not reasonably subject to differing interpretation with respect to the coverage sought by Sturla. The qualifications imposed by Exclusions (a), (m), (n), (o), and (p) are such that the terms of the policy could not have given rise to an objectively reasonable expectation of protection against claims that the product Sturla sold was "not that for which the damaged person bargained." Henderson, *supra,* at 441. This was the view of the Supreme Court of New Jersey when it passed on the scope of coverage afforded by a similarly worded liability policy. Like the New Jersey court we believe the risks insured by the standard form policy are "injury to people and damage to property *caused* by [a] faulty [product or] workmanship." *Weedo v. Stone-E-Brick, Inc.,* 81 N.J. at 239, 405 A.2d at 791 (emphasis supplied).[6]

---

[6] The New Jersey court supplied the following example of risks insured under a comprehensive general liability policy (CGL) and "business risks" that are not:

An illustration of this fundamental point may serve to mark the boundaries between "business risks" and occurrences giving rise to insurable liability. When a craftsman applies stucco to an exterior wall of a home in a faulty manner and discoloration, peeling and chipping result, the poorly-performed work will perforce have to be replaced or repaired by the tradesman or by a surety. On the other hand, should the stucco peel and fall from the wall, and thereby cause injury to the homeowner or his neighbor standing below or to a passing automobile, an occurrence of harm arises which is the proper subject of risk-sharing as provided by the type of policy before us in this case. The happenstance and extent of the latter liability is entirely unpredictable — the neighbor could suffer a scratched arm or a fatal blow to the skull from the peeling stonework. Whether the liability of the businessman is predicated upon warranty theory or, preferably and more accurately, upon tort concepts, injury to persons and damage to other property constitute the risks intended to be covered under the CGL.

81 N.J. at 240-41, 405 A.2d at 791-92.

Although Exclusion (a) states it "does not apply to a warranty of fitness or quality of the named insured's products," the proviso does not extend the scope of the policy to cover the suits brought against Sturla. For an expansion of protection on such a basis would run "directly counter to the basic principle that exclusion clauses *subtract* from coverage rather than grant it." *Vernon Williams & Son Construction, Inc. v. Continental Insurance Co.,* 591 S.W.2d 760, 764 (Tenn. 1979) (emphasis in original). As the Supreme Court of South Dakota made clear:

> Exclusion (a) does not extend or grant coverage. To the contrary it is a limitation or restriction on the insuring clause. The exception to exclusion (a) merely removes breach of implied warranty of fitness, quality, or workmanship from the specific exclusion relating to contractual liability. The exception remains subject to and limited by all other related exclusions contained in the policy. When considered with exclusion . . . [(o) in the instant case] it clearly appears that property damage claims of third persons resulting from the insured's breach of an implied warranty are covered unless the claimed loss is confined to the insured's own work or work product.

*Haugan v. Home Indemnity Co.,* 86 S.D. 406, 413, 197 N.W.2d 18, 22 (1972).

The damage claims asserted against Sturla were "not covered by the Fireman's Fund comprehensive general liability policy." As the circuit court further concluded, "exclusion (n) specifically excludes coverage to property damage to the named insured's product arising out of the product or a part thereof." The suits brought by Kiahuna Beach Houses, Ltd. and Moana/Kauai Corporation therefore raised no potential for indemnification liability, and Fireman's Fund had no duty to assume their defense. *See First Insurance Co. v. State,* 66 Haw. 413, 417, 665 P.2d 648, 652 (1983).

The judgment of the Circuit Court of the First Circuit is affirmed.

*Michael L. Freed* and *Leslie A. Hayashi (Hamilton, Gibson, Nickelsen, Rush & Moore,* of counsel) for appellant.

*Roy F. Hughes (Libkuman, Ventura, Ayabe & Hughes,* of counsel) for appellee.