HAWAIIAN INSURANCE & GUARANTY COMPANY, LTD., Plaintiff-Appellant, *v.* CHIEF CLERK OF THE FIRST CIRCUIT COURT, State of Hawaii, as Special Administrator of the Estate of Gerald August Lapenes, Jr., deceased, and LEONA ISABEL LAPENES, Defendants-Appellees, and EMMA K. E. KAHA-WAII, Individually and as Special Administratrix of the Estate of Emma K. Kahawaii, deceased; JACQUELINE T. CHANG, Individually and as Special Administratrix of the Estates of Del Blake Kajiwara, deceased, and Teri Kaiulani Michi Kajiwara, deceased; and WILLIAM KIM WAGGONER, Intervenors-Appellees

NOS. 10042 & 10258

(CIV. NO. 80951)

FEBRUARY 5, 1986

LUM, C.J., NAKAMURA, PADGETT, HAYASHI, AND WAKATSUKI, JJ.

OPINION OF THE COURT BY NAKAMURA, J.

In *Fortune v. Wong*, 68 Haw. 1, 4, 702 P.2d 299, 302 (1985), we ruled that "the plain wording of the 'motor vehicle exclusion' [of a home-owner's insurance policy] enabled the insurance carrier to deny cover-age" of a claim for damages premised on the negligent operation of an automobile by the minor child of the insured. The issue in this appeal from the Circuit Court of the First Circuit is whether the exclusion also serves to exclude coverage where the gravamen of the suits against the insured is the alleged negligent entrustment of an automobile, a question we did not reach in *Fortune v. Wong. See id.* at 4 n.1, 702 P.2d at 302 n.1. Since the policy in question plainly "does not apply . . . to bodily injury or property damage arising out of the ownership . . . [or] use . . . of" an automobile,[1] we reverse the circuit court's declaratory ruling that the insurer is obligated to undertake a defense of the suits.

I.

The insurer, Hawaiian Insurance & Guaranty Company, Ltd. (HIG), brought an action seeking a declaration that the homeowner's liability insurance policy it had issued to Leona Isabel Lapenes did not cover damages stemming from a catastrophic accident in which five minors, including Gerald August Lapenes, Jr.,[2] and Mervonie Kaio,

---

[1]The exclusion reads:

This policy does not apply:

1. Under Coverage E - Personal Liability and Coverage F - Medical Payments to Others:

a. to bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of:

(1) any aircraft; or

(2) any motor vehicle owned or operated by, or rented or loaned to any Insured; but this subdivision (2) does not apply to bodily injury or property damage occur[r]ing on the residence premises if the motor vehicle is not subject to motor vehicle registration because it is used exclusively on the residence premises or kept in dead storage on the residence premises; or

(3) any recreational motor vehicle owned by any Insured, if the bodily injury or property damage occurs away from the residence premises; but this subdivision (3) does not apply to golf carts while used for golfing purposes.

[2]Gerald August Lapenes, Jr., Mrs. Lapenes' son, was "insured" by the policy since he was a member of her household.

were killed and another seriously injured. The accident, a collision involving an automobile owned by Mrs. Lapenes, which was then being driven by Mervonie Kaio, and two other vehicles, occurred on November 24, 1979. Shortly thereafter, several suits alleging, *inter alia,* the negligent entrustment of the car by Gerald August Lapenes, Jr. to Mervonie Kaio were brought on behalf of the estates of the other deceased victims and the minor who survived the crash against the Special Administrator of the Estates of Mervonie Kaio and Gerald August Lapenes, Jr., the Chief Clerk of the First Circuit Court.[3]

When the Chief Clerk tendered the defense of the suits to HIG, it refused to defend him on the ground that the homeowner's policy did not apply to damage claims premised on "the negligent entrustment and/or maintenance of an automobile." It then brought an action against the Chief Clerk and Mrs. Lapenes, seeking a declaration that it was not obligated to defend the suits because the policy afforded no protection against such claims. After the submission of responsive pleadings Mrs. Lapenes and HIG, both averring the absence of facts in dispute, moved for summary judgment. The Chief Clerk joined the motion filed by Mrs. Lapenes. The defendants' motion was granted by the circuit court, and separate judgments were entered in their favor. HIG perfected timely appeals therefrom, and the appeals have been consolidated for disposition.

## II.

Our concern here is with an insurer's "duty to defend." " 'The nature of [this] duty . . . is purely contractual and depends, in the first instance, on the language of the particular policy involved.' *Ritter v. United States Fidelity & Guaranty Co.,* 573 F.2d 539, 542 (8th Cir. 1978)." *First Insurance Co. of Hawaii v. State,* 66 Haw. 413, 417, 665 P.2d 648, 651 (1983). The duty "arises whenever there is a potential for indemnifica-

---

[3]Paragraph 26 of two complaints averred:
Defendant LAPENES knew or should have known that Defendant KAIO was not properly licensed or competent to operate a motor vehicle and Defendant LAPENES was therefore negligent in entrusting the automobile to Defendant KAIO at or about the time of the collisions.

tion liability of insurer to insured under the terms of the policy." *Standard Oil Co. v. Hawaiian Insurance & Guaranty Co.*, 65 Haw. 521, 527, 654 P.2d 1345, 1349 (1982); *Gray v. Zurich Insurance Co.*, 65 Cal. 2d 263, 419 P.2d 168, 54 Cal. Rptr. 104 (1966). Thus we turn first to the language of the contract between the insurer and insured.

## A.

HIG agreed "to pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury or property damage, to which [the policy] applies." But the parties to the contract further stipulated it would not apply "to bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of .... any motor vehicle owned or operated by, or rented or loaned to any Insured ...." *See supra* note 1. HIG argues this language "clearly and unambiguously excludes coverage for bodily injury arising out of the use or operation of an automobile."

The Chief Clerk, however, asserts "the tort of negligent entrustment arises out of an individual's personal conduct (i.e. his 'entrustment') rather than that individual's 'ownership, maintenance, operation, use, loading or unloading' of an automobile." Leona Lapenes likewise asserts "[t]he claim of negligent entrustment is a separate and independent cause of action not related to use of the automobile."

Granted, it may be negligence to entrust an automobile to an incompetent driver, *see Restatement (Second) of Torts* § 308 (1965),[4] and the entrustment by Gerald August Lapenes, Jr. of the ill-starred motor vehicle to Mervonie Kaio was an act separate from her operation of the car. Still, the conduct of Leona Lapenes and her son relative to the fatal accident was separate "only in the fact that it preceded the collision." *Safeco Insurance Co. v. Gilstrap*, 141 Cal. App. 3d 524, 527, 190 Cal. Rptr. 425, 427 (1983). For it is clear "that [the] negligent entrustment [of

---

[4]Section 308 of *Restatement (Second) of Torts* reads:
It is negligence to permit a third person to use a thing or to engage in an activity which is under the control of the actor, if the actor knows or should know that such person intends or is likely to use the thing or to conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others.

an automobile] is irrelevant unless the person to whom [it] is entrusted acts in a negligent manner (creates an unreasonable risk) and in fact inflicts injury as the result of such conduct." *Bankert v. Threshermen's Mutual Insurance Co.,* 110 Wis. 2d 469, 476, 329 N.W.2d 150, 153 (1983); *Correira v. Liu,* 28 Haw. 145, 148 (1924).[5] Or as the Supreme Judicial Court of Massachusetts has put it, the "'negligent entrustment' [of an automobile] as a distinct and specific cause of action is not exclusive of, but, rather, is derived from the more general concepts of ownership, operation, and use of a motor vehicle." *Barnstable County Mutual Fire Insurance Co. v. Lally,* 374 Mass. 602, 605-06, 373 N.E.2d 966, 969 (1978).

### B.

Mrs. Lapenes, however, also maintains "a coverage provision must be construed broadly and in favor of the insured and the exclusion provisions must be construed narrowly and against the insurer." She directs us to case law from other jurisdictions where policy provisions similar to those at issue have been read to require coverage of damage claims alleging the negligent entrustment of motor vehicles.

True, we have said more than once that "insurance policies are contracts of adhesion . . . premised on standard forms prepared by the insurer's attorneys, . . . [and] they 'must be construed liberally in favor of the insured and the ambiguities resolved against the insurer.'" *Sturla, Inc. v. Fireman's Fund Insurance Co.,* 67 Haw. 203, 209, 684 P.2d 960,

---

[5] In *Correira v. Liu,* our predecessors said:

The owner of an automobile owes to the public dual duties, one existing at the common law not to let his car to a person known to him to be an incompetent chauffeur, the other, the creature of statute (L. 1921, c 235), not to let it to any person not licensed by law. The breach of a legal duty is negligence. If the owner of an automobile breaches his common-law duty and his breach and the negligence of the hirer combined are the direct and proximate cause of an injury to another, the owner is liable therefor to such other. (See *Parker v. Wilson,* 60 So. (Ala.) 150; *Gardiner v. Solomon,* 75 So. (Ala.) 621.) On the other hand, if the owner breaches his statutory duty and his breach and the hirer's incompetency combined are the direct and proximate cause of an injury to another the owner is liable to such other. But only in the event of incompetency; otherwise not.

28 Haw. at 148-49.

964 (1984). *See also State Farm Mutual Automobile Insurance Co. v. Bailey*, 58 Haw. 284, 289, 568 P.2d 1185, 1188 (1977); *Masaki v. Columbia Casualty Co.*, 48 Haw. 136, 141, 395 P.2d 927, 929 (1964); *Alexander v. Home Insurance Co.*, 27 Haw. 326, 328 (1923). But the rule of construction urged upon us "is not for application whenever insurer and insured 'simply disagree over the interpretation' of the terms of a policy and there is an assertion of ambiguity." *Sturla, Inc. v. Fireman's Fund Insurance Co.*, 67 Haw. at 209, 684 P.2d at 964 (quoting *U.S. Fire Insurance Co. v. Colver*, 600 P.2d 1, 3 (Alaska 1979)). Ambiguity exists and the rule is followed "only when the [policy] taken as a whole, is reasonably subject to differing interpretation." *Modern Construction. Inc. v. Barce, Inc.*, 556 P.2d 528, 529 (Alaska 1976) (quoted in *Sturla, Inc. v. Fireman's Fund Insurance Co.*, 67 Haw. at 209-10, 684 P.2d at 964). Absent an ambiguity, "the terms of the policy should be interpreted according to their plain, ordinary, and accepted sense in common speech . . . ." *First Insurance Co. of Hawaii v. State*, 66 Haw. at 424, 665 P.2d at 657.

Giving due respect to the plain words of the policy, we can only conclude the damages sought from the insured arose out of the ownership or use of Leona Lapenes' motor vehicle. Thus, there was no "potential for indemnification liability of insurer to insured," *Standard Oil Co. v. Hawaiian Insurance & Guaranty Co.*, 65 Haw. at 527, 654 P.2d at 1349, and there was no duty on the part of HIG to accept the tendered defense.

The judgment of the circuit court is reversed.

*Roy Y. Yempuku* (*William L. Goo* with him on the briefs) for plaintiff-appellant.

*Patricia Kim Park* (*Arthur Y. Park, Sean Kim,* and *Gordon Kim* with her on the brief; *Gill, Park, Park & Kim,* of counsel) for Defendant-Appellee Leona Lapenes and intervenors-appellees.
On the brief:

*Anthony Y. K. Kim* and *Brian Takahashi* (*Rush, Moore, Craven, Kim & Stricklin,* of counsel) for Appellee Chief Clerk, First Circuit Court.