**In re KAMAKANI SERVICES, INC., Debtor.**

**UNITED CAPITOL INSURANCE CO., Plaintiff,**

**v.**

**KAMAKANI SERVICES, INC., and Superior Homes of Hawaii, Inc., Defendants.**

**Bankruptcy No. 88–00038.
Adv. No. 88–0208.**

United States Bankruptcy Court,
D. Hawaii.

April 10, 1991.

M. Tyler Pottenger, Honolulu, Hawaii, for plaintiff.

Walter K. Horie, Honolulu, Hawaii, for Superior Homes of Hawaii, Inc.

## MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SANCTIONS

JON J. CHINEN, Bankruptcy Judge.

United Capitol Insurance Co. has moved for sanctions against the attorney for Superior Homes of Hawaii, Inc. pursuant to Federal Rules of Civil Procedure ("Fed.R. Civ.P.") Rule 11, Bankruptcy Rules ("Bankr.R.") Rule 9011, 28 U.S.C. § 1927, and the inherent power of the court to punish abusive practices. A hearing was held on February 6, 1991, at 8:30 a.m. with appearances entered by Walter K. Horie, Esq. for the defendant-counsel of Superior Homes of Hawaii, Inc. and M. Tyler Pottenger, Esq. for the plaintiff.

### I.

### BACKGROUND

While involved as a defendant in a law suit brought in state court by Superior Homes of Hawaii, Inc. ("Superior"), Kama-kani Services, Inc. ("Kamakani") filed for bankruptcy in January 1988. Defense of the state action was tendered to Kamakani's general liability insurer, United Capitol Insurance Co. ("United") in August 1988.

In December 1988, United filed the underlying declaratory action as an adversary proceeding in the Bankruptcy Court to determine whether a duty existed to defend or indemnify Kamakani in the state court action. As a potential beneficiary under the policy, Superior was allowed to intervene as a defendant.

Cross-motions for summary judgment were filed by United and Superior in 1989. By an order entered on November 13, 1989, the Bankruptcy Court granted summary judgment to United and denied Superior's motion.

Superior filed a timely appeal to the District Court which, on July 2, 1990, affirmed the decision of the Bankruptcy Court. Final judgment was entered on August 10, 1990.

On January 10, 1991, United filed a motion for sanctions against the attorney for Superior. The memorandum submitted in support of the motion requests damages in the amount of $17,065.80 as detailed on attached billing statements. The amounts requested include attorney's fees for defending against Superior's appeal.

### II.

### FED.R.CIV.P. RULE 11

■ By the limitations contained within its own text, the Federal Rules of Civil Procedure "do not apply to proceedings in bankruptcy...." Fed.R.Civ.P. 81(a)(1). The Ninth Circuit recognized this in *In re Akros Installations, Inc.*, 834 F.2d 1526 (9th Cir.1987).

In *Akros*, the Ninth Circuit held that a district court may not award sanctions under Fed.R.Civ.P. Rule 11 (hereinafter "Rule 11") for an appeal from bankruptcy court. The court went on to explain that "[t]he Federal Rules of Civil Procedure are made explicitly inapplicable to 'proceedings in bankruptcy ... except in so far as they

may be made applicable thereto' by the Bankruptcy Rules." *Akros, supra* at 1531 (quoting from Fed.R.Civ.P. 81(a)(1)). No such exception for Rule 11 in the Bankruptcy Rules was found by the Ninth Circuit in *Akros*, nor is any found by this court today.

Thus, since Rule 11 is inapplicable, no award of sanctions may be made under this rule.

### III.

### BANKR.R. RULE 9011

■ Despite the inapplicability of Rule 11 to proceedings in bankruptcy as a basis for awarding sanctions, the policy and analysis of that rule may generally be applied to the imposition of sanctions under Bankr.R. Rule 9011 (hereinafter "Rule 9011"). *E.g. In re Chisum*, 847 F.2d 597, 599 (9th Cir.1988); *In re Film Ventures Intern., Inc.*, 89 B.R. 80, 83 n. 1 (9th Cir.BAP 1988); 9 Collier on Bankruptcy §§ 9011.01–.02 (15th ed. 1979). As the 9th Circuit has held that "Rule 9011 governs only the initial proceedings in bankruptcy court," this court will only review, for the purposes of Rule 9011, Superior's filings at the trial level. *Akros*, 834 F.2d at 1531.

### A. Signing of Documents

Unlike Rule 11, Rule 9011 makes certain exceptions as to what must be signed when a party is represented by an attorney. The signature of an attorney is required on "[e]very petition, pleading, motion and other paper served or filed ... except a list, schedule, statement of intention, Chapter 13 Statement, or amendments thereto...." Bankr.R. 9011(a). By its terms, Rule 9011 is not applicable to a "violation" in connection with one of the excepted documents. The violations being alleged by United are traceable to documents filed and signed by Superior's attorney during the course of litigating the declaratory action. As such, Rule 9011 scrutiny is proper.

### B. Analysis

In *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 829 (9th Cir.1986), the Ninth Circuit Court of Appeals held that Rule 11, as amended in 1983 [1], did not require any finding of subjective bad faith on the part of a signing attorney. Instead, an objective test of "reasonableness under the circumstances" is used. *See* 1983 Advisory Committee Note on Rule 11. *See also Business Guides, Inc. v. Chromatic Communications Enterprises*, — U.S. —, —, 111 S.Ct. 922, 933, 112 L.Ed.2d 1140 (1991) (Whether signed by a party or attorney, Rule 11 utilizes a standard of reasonableness under the circumstances). Conduct is tested against the standard of "a competent attorney admitted to practice before the district court." *Zaldivar* at 830. The court found two avenues for imposing sanctions under Rule 11: the "Frivolousness" Clause and the "Improper Purpose" Clause.

■ The "Frivolousness" Clause relates to a signing attorney's certification that "to the best of the attorney's or party's knowledge, information, and belief formed after reasonable inquiry [the signed document] is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law...." Bankr.R. Rule 9011(a). Resolution of the facts and law associated with a disputed issue by dismissal or summary judgment is not dispositive of whether a Rule 11 or Rule 9011 violation has occurred. The court must look back to the time that the document was signed. *Community Elec. Service v. National Elec. Contr.*, 869 F.2d 1235, 1243 (9th Cir.1989); *Zaldivar* at 830–831.

In the instant case, the fact and law branches of Rule 9011 are easily separated since the facts presented by both sides in litigating the declaratory action were substantially the same. The difficulty arises when reviewing the interpretations assigned by the parties to the same set of facts. Thus, the court must determine whether Superior's attorney conducted a reasonable inquiry into the law and whether reliance on the fruits of that research was warranted.

---

**1.** Rule 9011 was amended in 1983 to match the changes to Rule 11.

Concrete evidence of a reasonable inquiry into the law by Superior's attorney is seen by the authorities he cited. Neither side was able to provide the court with precedential cases on point from Hawaii's state courts or any federal court interpreting Hawaii law. Superior was able to provide the court with case law from other, non-binding jurisdictions which supported Superior's interpretation.

Superior's reliance on its legal research appears warranted for two reasons. First, the specific issues presented by the declaratory action were of first impression in this jurisdiction. Neither side cited cases on point which would compel a bankruptcy court to adopt their position. In *Bank of Maui v. Estate Analysis, Inc.*, 904 F.2d 470 (9th Cir.1990), the Ninth Circuit held that the binding effect of a bankruptcy appellate panel was so uncertain that a plaintiff's reliance on a minority viewpoint from a bankruptcy court in another circuit, despite a plainly contrary case on point from this circuit's BAP, was not clearly frivolous and unreasonable. In the case before this court, no contrary cases on point have been found and Superior appears to have even more supporting case law from other jurisdictions for its position than did the plaintiff in *Bank of Maui.*

Furthermore, Hawaii's courts routinely look to arguments made in other jurisdictions for guidance in insurance contract cases when no precedent is available. *E.g. Sturla, Inc. v. Fireman's Fund Insurance Co.*, 67 Haw. 203, 210, 684 P.2d 960, 965 (1984) (use of a New Jersey case interpreting similarly worded insurance policy); *Masaki v. Columbia Casualty Co.*, 48 Haw. 136, 141, 395 P.2d 927, 929 (1964) (use of Wisconsin and California cases to interpret an insurance clause).

Second, Superior's attorney also appears to base his position on a general policy enunciated in Hawaii's state courts:

Because insurance policies are contracts of adhesion and are premised on standard forms prepared by the insurer's attorneys, we have long subscribed to the principle that they must be construed liberally in favor of the insured and the ambiguities resolved against the insurer. *Sturla*, 67 Haw. at 209, 684 P.2d at 964. *See also State Farm Mutual Automobile Insurance Co. v. Bailey*, 58 Haw. 284, 289, 568 P.2d 1185, 1188 (1977). However, the Supreme Court of Hawaii has added that "ambiguity is found to exist and the rule followed only when the contract taken as a whole is reasonably subject to differing interpretation." *Sturla* at 209–210 (quoting from *Modern Construction, Inc. v. Barce, Inc.*, 556 P.2d 528, 529 (Alaska 1976)) (quotes omitted).

Superior meets the qualifying test of ambiguity for Rule 9011 purposes since Superior itself could reasonably interpret the insurance contract in the manner it did, and because the actions of the other involved parties showed some uncertainty over coverage. The first act occurred when Kamakani's president as debtor-in-possession attempted to tender defense to United in August 1988. As Kamakani's president was the one who originally arranged for the insurance contract, his attempt to seek coverage was a reasonable indicator to Superior that at least one party to the insurance contract expected coverage under the facts as they existed.

The next step was taken by United. Rather than simply denying coverage because it felt the interpretation was crystal clear, United sought the protection of a declaratory action. This provided Superior with another signal that its arguments were not so fatally flawed that they should be dismissed outright.

Finally, when United filed its declaratory action, Kamakani's chapter 7 trustee saw enough merit to file an opposing answer. Admittedly, the trustee then sat back and allowed United and Superior to duke it out, and it is reasonable for the trustee to lay back to preserve the bankruptcy estate in light of Superior's active advocacy. Thus, Superior had three indications, other than its own assessment, that the terms of the insurance contract could reasonably be subject to differing interpretations.

■ The "Improper Purpose" Clause is to be tested by objective standards. *Zaldi-*

*var* at 831–832. No improper purpose is found by this court in Superior participating in the declaratory action. Policy favors a vigorous defense by a beneficiary-creditor when an insurance company denies coverage to an insured-debtor who may not have the funds to pursue uncertain claims. The beneficiary-creditor conserves the bankruptcy estate's assets by bearing the brunt of the litigation costs and, if the creditor wins, reducing the amount of debt payable directly out of the estate to that creditor.

Superior's intervention and subsequent litigation in the declaratory action is also bolstered by the implications of H.R.S. § 431:10–242:

> Where an insurer has contested its liability under a policy and is ordered by the courts to pay benefits under the policy, the policyholder [and/or] the beneficiary under a policy ... shall be awarded reasonable attorney's fees and the costs of suit, in addition to the benefits under the policy.

There is no corresponding statute awarding fees and costs to a prevailing insurance company. Hawaii's legislative branch apparently favors a policy of vigorous defense by insureds and beneficiaries when faced by an insurance company denying coverage. While reliance on such a statute cannot excuse a violation of Rule 9011, it does help to illustrate that Superior's intervention and litigation in the declaratory action was not improper.

### C. Rule 9011 Sanctions

Since the court finds that Superior conducted a reasonable inquiry, had a position well-grounded in fact, made legal arguments warranted by existing law, and did not file documents for any improper purpose, no sanctions under Rule 9011 will be awarded.

**2.** The text of the statute:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

## IV.

### SECTION 1927 AND THE COURT'S INHERENT POWERS

■ Application of 28 U.S.C. § 1927[2] hinges on a finding that counsel has acted recklessly or in bad faith to unreasonably and vexatiously multiply the proceedings. *See In re Akros Installations, Inc.,* 834 F.2d 1526, 1532 (9th Cir.1987). In *United States v. Blodgett,* 709 F.2d 608, 610 (9th Cir.1983), the 9th Circuit allowed a district court to impose sanctions under § 1927 for a frivolous appeal to the circuit court. This principle of allowing a trial court to impose sanctions under this statute for an appeal taken from it has not been expressly overruled or reaffirmed in this circuit. *But cf. Cooter & Gell v. Hartmarx Corp.,* — U.S. ——, 110 S.Ct. 2447, 2461–62, 110 L.Ed.2d 359 (1990) (District courts cannot impose sanctions under Rule 11 for frivolous appeals taken from it to the circuit court).

United argues that bad faith is shown by Superior's attorney's knowledge of the facts prior to summary judgment. However, this court has already stated that the facts were not in dispute, only the interpretation given to those facts. If bad faith may be shown by a disagreement between counsel for each side over the application of law to a set of facts, sanctions would become quite common.

In regards to the appeal, United's attorney attached an affidavit to the motion for sanctions averring that he had "advised" Superior's attorney "as early as November 1989 that his (Superior's) continued pursuit of this meritless claim might result in a request for sanctions." Since summary judgment was granted on November 1, 1989, the court takes United's attorney's assertion to mean that a motion for sanctions may be brought (it was) if Superior appeals (it did). However, Superior's counsel taking an appeal from an adverse summary judgment ruling under the facts of this case does not display bad faith.

United also points to the Bankruptcy Court's grant of summary judgment and Superior's "harassing, dilatory, unreasonable and vexatious conduct" in filing its appeal. The argument is made that the grant of summary judgment to United put Superior's attorney on notice that his "claim was destined to fail." United's logic is odd. If the grant of summary judgment to one party determines whether an appeal by the loser is destined to fail, then why would anyone ever appeal? Without getting into numbers, it is known that summary judgments granted by trial courts are often reversed on appeal every year.

Finally, United zeroes in on a statement in the conclusion of the order affirming the grant of summary judgment in which the District Court states that the trial court's decision was "the only tenable decision given the specific language of the policy in question." Order Affirming Decision and Order of the Bankruptcy Court at 12 (Civ. No. 90–00085 MP, D.Haw. July 2, 1990). This phrase in the conclusion must be read in the context of the entire 12–page order issued by the District Court. It is the opinion of this court that the word "untenable" meant untenable in light of the legal reasoning laid out by the District Court and was not a finding that Superior's legal arguments were untenable in the sense of being meritless, frivolous, or made in bad faith. This court notes that United did not ask the appellate court for the costs of appeal, nor did that court sua sponte grant such costs.

No recklessness or bad faith leading to an unreasonable and vexatious multiplication in proceedings is found in Superior's intervention in the declaratory action, in its litigation through summary judgment, or in its appeal to district court.

The standards for awarding attorney's fees and costs to a party under the inherent power of the court have several points in common with analysis for imposition of sanctions under 28 U.S.C. § 1927. Namely, the court must find that that counsel brought or maintained an unfounded action or defense "in bad faith, vexatiously, wantonly, or for oppressive reasons." *Akros*

at 1532 (quoting from 6 J. Moore, W. Taggart & J. Wicker, Moore's Federal Practice § 54.78[3] (2nd ed. 1987)). Given the reasons already stated, this court finds no basis to utilize its inherent powers to impose sanctions on Superior's attorney.

## V.

## TIMELINESS OF MOTION FOR SANCTIONS

█ An alternative ground for denying United's motion for sanctions is its untimeliness. First, the primary purpose behind the use of sanctions is to deter subsequent abuses. "A proper sanction assessed at the time of a transgression will ordinarily have some measure of deterrent effect on subsequent abuses and resultant sanctions." *In re Yagman*, 796 F.2d 1165, 1183–84 (9th Cir.1986), cert. denied, 484 U.S. 963, 108 S.Ct. 450, 98 L.Ed.2d 390 (1987). *See also* Schwarzer, *Sanctions Under the New Federal Rule 11–A Closer Look*, 104 F.R.D. 181, 198 (1985). This is not to say that sanctions decisions are never to be withheld until the end of litigation. *Yagman* at 1183.

In its memorandum supporting the motion for sanctions, United States that its summary judgment motion pointed out the fatal flaws in Superior's position and that seven months was more than sufficient for Superior's attorney to have made an adequate investigation of the law and facts. If this is taken as being true, United certainly had grounds to request sanctions long before termination by final judgment. Instead, they waited an additional 17 months and spent thousands of dollars before bringing this motion. While the court empathizes with an attorney's desire to obtain the solid footing of having prevailed before attempting to get sanctions against an opposing attorney, such practices do not comport with the policy of using sanctions to deter abusive behavior. Rather, such practices promote the use of hindsight and creates the danger of turning sanctions into nothing more than a fee shifting tool.

Second, the timing of the motion is suspect. Final judgment was entered on Au-

gust 10, 1990. United's attorney's billings indicate that they discussed a motion for sanctions against Superior's attorney on August 29 and 30, 1990. Research soon followed and United's attorneys finished the draft of the motion for sanctions on September 28, 1990. On January 10, 1991, five months after final judgment and over three months after having completed their draft, United filed its motion for sanctions.

■ The timeliness of a Rule 11 or 9011 motion rests within the discretion of the judge. *See* Advisory Committee Note of 1983 to Amended Rule 11. The Ninth Circuit has formulated a flexible standard that looks at the circumstances and relates them to the deterrence aspect of Rules 11 and 9011. *Community Elec. Service v. National Elec. Contr.*, 869 F.2d 1235, 1242 (9th Cir.1989); *Yagman* at 1184. Likewise, the timing of sanctions in contexts other than Rules 11 and 9011 should also relate to deterrence. *Id.*

Five months after the final disposition of a case is generally too long to wait to file a motion for sanctions. United offers no explanation for the long delay, nor for the three month period between finishing their draft of the motion and actually getting the motion filed. As such, the motion for sanctions is untimely.

### CONCLUSION

For the reasons given, this court finds that sanctions against Superior's attorney are not appropriate. The motion for sanctions brought by United Capitol Insurance Co. is DENIED in full.