(75 P.3d 263)

No. 89,366

PENN-AMERICA INSURANCE COMPANY, *Appellant*, v. MACALA J. JOHNSON, a Minor, by and through her Father, Robert W. Johnson, and DANNY L. LAROSE, and DALTON L. SCHEIB, a Minor, by and through his Paternal Grandmother, Sherry Scheib, *Appellees*.

Opinion filed August 29, 2003.

*Robert A. Horn* and *Bradley M. Dowd*, of Horn, Aylward & Bandy, LLC, of Kansas City, Missouri, for appellant.

*Laurie Del Percio* and *Douglas R. Horn*, of The Horn Law Firm, P.C., of Independence, Missouri, for appellee Macala Johnson.

No appearances by appellees Danny LaRose and Dalton L. Scheib.

Before BEIER, P.J., LEWIS and JOHNSON, JJ.

Johnson, J.: Penn-America Insurance Company (Penn-America) appeals the district court's interpretation of the nonowned auto coverage provision in its garage liability policy. We reverse.

Underlying this action is a tragic accident. Danny LaRose was operating his personally owned tow truck to move his own railroad switch box at a storage facility in Oak Grove, Missouri. The tow truck's boom failed, and the switch box fell onto Kristi Degraffenried, resulting in her death. LaRose would frequently use his personally owned tow truck to perform work for his employer, Lizard Auto Sales (Lizard) of Kansas City, Kansas. However, at the time of the accident, LaRose was not performing work on behalf of Lizard.

The heirs of Degraffenried filed a petition for wrongful death against Lizard and LaRose in the Circuit Court of Jackson County,

Missouri. Subsequently, Lizard's insurer, Penn-America, filed a petition in the District Court of Wyandotte County, Kansas, seeking a declaratory judgment that the garage liability insurance policy issued to Lizard did not create any duty to defend or indemnify Lizard or LaRose in any action brought for the wrongful death of Degraffenried.

Both Penn-America and Macala Johnson, a plaintiff in the wrongful death suit and a defendant in the declaratory judgment action, filed motions for summary judgment. Penn-America asked the court to find that the tow truck was not a "covered auto" under Lizard's policy, while Johnson asked the court to find it was covered. Following oral arguments on the motions, the district court denied Penn-America's motion and granted Johnson's motion, thereby declaring that the policy created a duty of Penn-America to defend and indemnify LaRose in the suit brought by the heirs of Degraffenried.

The declarations page of the subject insurance policy contains numeric symbols to show the covered autos, one of which is "29." The Garage Coverage Form, Section 1—Covered Autos, subsection A, describes symbol 29 as follows:

"NON-OWNED 'AUTOS' USED IN YOUR GARAGE BUSINESS. Any 'auto' you do not own, lease, hire, rent or borrow used in connection with your garage business described in the Declarations. This includes 'autos' owned by your employees or partners or members of their households while used in your garage business."

The district court found that the plain language of the policy established only two requirements for the tow truck to be covered under the symbol 29 definition: (1) the vehicle be nonowned by the insured, Lizard; and (2) the vehicle be an auto used in connection with Lizard's garage business. The court found the evidence undisputed that LaRose owned the truck, thus making it a nonowned auto under Lizard's policy. Further, the court said that "[t]he uncontroverted evidence is that Mr. LaRose had used the tow truck in connection with Lizard's garage business before the accident." Citing to rules of construction, the district court opined that it could not read a requirement into the policy that the tow truck had to be engaged in garage work at the time of the accident.

Penn-America asserts that Lizard's garage liability policy only provided coverage for LaRose's tow truck while it was actually being used in Lizard's garage operations. Thus, we are called upon to interpret an insurance contract which is a question of law subject to de novo review. *American States Ins. Co. v. Farmers Alliance Mut. Ins. Co.*, 28 Kan. App. 2d 754, 758, 20 P.3d 743, *rev. denied* 271 Kan. 1035 (2001).

We agree with the district court's two-part analysis of the non-owned auto definition: (1) the insured does not own, lease, hire, rent, or borrow the vehicle; and (2) the vehicle is used in connection with the insured's garage business. Where we depart is in the interpretation of the second requirement.

The district court opined that it could not add language to the policy to require that the tow truck had to be "used in connection with [Lizard's] garage business" *at the time of the accident.* However, in order to find coverage for the tow truck, the district court did, in fact, read words into the policy when it found "that Mr. LaRose had used the tow truck in connection with Lizard's garage business *before the accident.*" (Emphasis added.) The policy does not read *"previously* used in connection with your garage business." To the contrary, the second sentence specifically refers to employee-owned vehicles *while* they are being used in the garage business.

The district court found that the second sentence does not restrict the meaning of the first sentence or, otherwise, the court opined that there would be a conflict and ambiguity created. We agree that "a reasonable interpretation of 'includes' can also mean 'for example' or 'in illustration of' and that, under this interpretation, the second sentence provides examples of what may be, but is not limited to, a 'nonowned auto.'" *Pekin Insurance Co. v. Benson*, 306 Ill. App. 3d 367, 373, 714 N.E.2d 559 (1999). However, the illustration would be, at the least, a poor exemplar of coverage which was intended to also cover the personal use of employee-owned vehicles. Instead, the second sentence clarifies that the coverage applies *while* the nonowned vehicle is being used in connection with garage business.

While interpreting the words used in the policy, we should be mindful that the parties to the contract are Penn-America and Lizard. The contracting parties agreed that Penn-America would defend and indemnify Lizard against claims for which Lizard might become legally liable as a result of Lizard's garage business operations. LaRose only becomes involved in the contract because of his status as a Lizard employee whose acts or omissions in that capacity could result in a claim against Lizard.

We must also be cognizant of the purpose of nonowned auto coverage. "In the case of an employer, the non-ownership provision serves the purpose of protecting [the employer] from liability under the doctrine of respondeat superior arising from the torts of employees using their own personal vehicles in the employer's business." 8 Couch on Insurance 3d §118:43, p. 118-62 (1995); see 6C Appleman, Insurance Law and Practice §4454 (1979). The provision "covers only the liability of the employer, and not that to which the employee is subject because of his or her conduct." 8 Couch on Insurance 3d §118:43, p. 118-63. "[S]ince liability of the insurer is dependent upon the existence of liability of the employer for the acts of its employee, where no liability of the employer exists under the doctrine of respondeat superior, there is no liability of the insurer." 8 Couch on Insurance 3d §118:43, p. 118-63.

In addition to being contrary to the purpose of nonowned auto coverage, the district court's interpretation could lead to obviously absurd results. The court apparently placed no limitations on how often or how recently an employee's nonowned vehicle had to be used previously in connection with Lizard's garage business in order to be covered for the employee's personal use. If an employee occasionally picks up Lizard's mail while driving his or her child's car and the child has an accident in the car after returning to college, does Penn-America have to defend and indemnify the child? If so, how long does Penn-America's duty continue: so long as the child owns the car; so long as the parent remains employed by Lizard; until the expiration of the policy term in which the vehicle was used in connection with Lizard's garage business? We do not believe the nonowned auto coverage was intended to provide free

personal insurance to any employee who has previously used his or her vehicle for garage operations.

We have found no Kansas cases on point, even though non-owned auto coverage is not a new concept. Penn-America cites to foreign cases to support its claim that coverage only applies if the accident occurs while the nonowned vehicle is engaged in garage operations. See *Dairy Road Partners v. Island Ins.*, 92 Hawaii 398, 423, 992 P.2d 93 (2000); *Pekin Insurance Co. v. Benson*, 306 Ill. App. 3d at 374; *Henderson v. Maloid*, 683 So. 2d 342, 347 (La. App. 1996). However, these cases all involve actions against the insured, not against the employee or vehicle owner. The precise issue before us is not involved, but these cases all appear to accept as a given that in order to qualify for nonowned auto coverage, the accident had to occur while the vehicle was being used in the course and scope of the insured's business. Certainly, such a result would obtain if the policy language is " 'construed in accord with the reasonable expectations of a layperson.' " *Island Ins.*, 92 Hawaii at 412 (quoting *Sturla, Inc. v. Fireman's Fund Insurance Co.*, 67 Hawaii 203, 209, 684 P.2d 960 [1984]).

The district court's journal entry directed that "Penn-America Insurance Company is, therefore, ordered to defend and indemnify Danny LaRose in the underlying wrongful death case." We find the order to be erroneous on two levels. First, Danny LaRose is not an insured to which Penn-America owes a duty to defend and indemnify. Penn-America's duty is to defend and indemnify Lizard to the extent that LaRose's acts or omissions created liability on behalf of Lizard. Secondly, with undisputed evidence that the tow truck was not being used in connection with Lizard's garage operations at the time of the accident, the nonowned auto coverage was inapplicable.

Reversed and remanded with instructions to enter summary judgment in favor of Penn-America.