**David M. FIELD, Plaintiff,**

v.

**LIBERTY MUTUAL INSURANCE COMPANY, a Massachusetts corporation; John Does 1–10; Doe Corporations 1–10; Doe Partnerships 1–10; and Doe Entities 1–10, Defendants.**

**Civ. No. 91–00320 DAE.**

United States District Court,
D. Hawaii.

July 23, 1991.

James T. Leavitt, Jr., John D. Yamane, Woodruff K. Soldner, Honolulu, Hawaii, for David M. Field.

Rush Moore Craven Sutton Morry & Beh, David A. Nakashima, Kathy K. Higham, Honolulu, Hawaii, for Liberty Mut. Ins. Co.

ORDER DENYING PLAINTIFF'S MOTION TO REMAND, GRANTING DEFENDANT'S MOTION TO STAY PROCEEDINGS PENDING ARBITRATION OF THE PARTIES' UNINSURED MOTORIST LIABILITY AND DAMAGE DISPUTE, AND DENYING PLAINTIFF'S REQUEST TO COMPEL ARBITRATION OF THE PARTIES' UNDERINSURED MOTORIST COVERAGE DISPUTE

DAVID A. EZRA, District Judge.

On June 7, 1991, defendant Liberty Mutual Insurance Company ("Liberty") filed a

motion to stay proceedings pending arbitration. On June 12, 1991, plaintiff David M. Field ("Field") filed a motion to remand this matter to state court. Pursuant to an order entered July 19, 1991, the court took both motions under submission without oral argument. Appearing on the papers are James T. Leavitt, Jr., Esq. for Field and Kathy K. Higham, Esq. for Liberty. The court having reviewed the motions and the memoranda and exhibits submitted, having taken the matter under advisement and thoroughly considered the relevant law, DENIES Field's motion to remand, GRANTS Liberty's motion to stay proceedings pending arbitration of the parties' uninsured motorist liability and damage dispute, and DENIES Field's request to compel arbitration of the parties' underinsured motorist coverage dispute.

## BACKGROUND

On September 8, 1989, Field was struck by a car and injured severely after he pulled off the side of the road to assist a disabled vehicle. A third vehicle that contributed to the accident fled the scene and was never identified. On March 6, 1991, with the goal of recovering on the liability of the car that fled the scene and supplementing the recovery he had already received from the driver of the disabled vehicle and the driver of the car that struck him, Field filed a claim for uninsured and underinsured[1] motorist benefits with Liberty, his insurer under a policy purchased November 18, 1988. Liberty denied the claim on March 21, 1991.

On April 29, 1991, Field sued Liberty in the Circuit Court of the First Circuit, State of Hawaii. His complaint demands: (1) reformation of his insurance policy to provide him underinsured motorist benefits, *see* footnote 1 *supra;* (2) underinsured motorist benefits up to $105,000 under the reformed policy; (3) uninsured motorist benefits of $105,000; (4) damages for Liberty's alleged tortious breach of the insurance contract; (5) punitive damages for

Liberty's denial of uninsured motorist coverage; (6) treble damages for Liberty's alleged unfair and deceptive trade practices; and (7) attorneys' fees and costs.

Alleging diversity jurisdiction, Liberty removed the suit to this court on June 3, 1991. Field is a citizen of Hawaii, and Liberty is a company incorporated and having its principal place of business in Massachusetts. Field now moves to remand the case to state court on the ground that 28 U.S.C. § 1332(c)(1) defeats diversity jurisdiction. Liberty opposes the motion to remand and seeks a stay of these proceedings pending arbitration of the dispute over Field's claim for uninsured motorist benefits. Field opposes the stay but requests, in the alternative, that if the court does stay proceedings on the parties' uninsured motorist dispute it also compel arbitration of the parties' underinsured motorist dispute.

## DISCUSSION

### I. *Field's Motion to Remand*

Unless this court has subject matter jurisdiction, it cannot grant the stay Liberty seeks. Accordingly, the court addresses the jurisdictional issue first.

■ Field argues that under 28 U.S.C. § 1332(c)(1), the court lacks diversity jurisdiction over this action. Section 1332(c)(1) provides:

a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business, *except that in any direct action against the insurer of a policy or contract of liability insurance, ... to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of the State of which the insured is a citizen....*

(Italics added). Field suggests his action against Liberty constitutes a "direct ac-

---

**1.** The parties dispute whether Field is in fact entitled to underinsured motorist coverage. Field apparently signed a form rejecting such coverage, but he now claims his policy should be reformed to provide it. *See* Complaint at ¶¶ 25–26; Haw.Rev.Stat. § 431:10C–301(b)(4) (Supp.1990).

**1138**

tion" within the meaning of section 1332(c)(1). He also argues he is an "insured not joined as a party-defendant" and that the court should therefore deem Liberty a citizen of Hawaii, thereby destroying diversity jurisdiction.

Congress enacted section 1332(c)(1) "specifically to eliminate from diversity jurisdiction tort claims in which both the injured party and the tortfeasor are local residents, but which, under 'direct action' statutes, are brought against the tortfeasor's foreign insurance carrier without joining the tortfeasor as a defendant." *Beckham v. Safeco Ins. Co. of America*, 691 F.2d 898, 901 (9th Cir.1982); *see also, Northbrook Nat. Ins. Co. v. Brewer*, 493 U.S. 6, 110 S.Ct. 297, 299, 107 L.Ed.2d 223 (1989). Section 1332(c) applies in third-party tort liability cases, where the "insured" is the defendant-tortfeasor, not the plaintiff-victim who is suing his own insurer on a contract theory. *Smith v. State Farm Ins. Co.*, 615 F.Supp. 453, 455 (D.Haw.1985).

In *Smith*, as in this case, the plaintiff-victim sued the insurer on the plaintiff's own insurance policy. This court refused to find in *Smith* that section 1332(c)(1) destroyed diversity jurisdiction, noting the statute was not meant to cover cases in which the "insured" is the plaintiff. *Id.* Under *Smith*, Field's claims for benefits under his policy do not constitute a "direct action" within the meaning of section 1332(c)(1). Under *Beckham*, his claims for damages arising from Liberty's alleged bad faith refusal to pay those benefits also fall outside the "direct action" proviso. *See* 691 F.2d at 902 (suit against an insurer for bad faith refusal to settle a claim is not a direct action under section 1332(c)(1)).[2]

Accordingly, the court finds section 1332(c)(1) does not destroy this court's diversity jurisdiction, and the court denies Field's motion to remand.

## II. *Liberty's Motion to Stay Proceedings Pending Arbitration of the Parties' Uninsured Motorist Liability and Damage Dispute*

Liberty's policy provides that if Liberty and Field cannot agree either as to Field's entitlement to damages or as to the amount of those damages, then the dispute will be submitted to a panel of three arbitrators upon the written demand of either Field or Liberty. *See* Liberty's Memorandum in Support of Motion to Stay, Exhibit "A" at 7. Liberty has made a written demand for arbitration, and it argues that under Haw. Rev.Stat. § 658–5 (1985), this court must stay the instant judicial proceedings pending its completion.

Because this court sits in diversity, it applies state substantive law, including state choice of law rules. *See Gee v. Tenneco, Inc.*, 615 F.2d 857, 861 (9th Cir.1980). Under Hawaii's choice of law rules, the law of the state where an insurance contract is made governs this court's determination of the parties' rights. *Smith*, 615 F.Supp. at 455; *accord, Insurance Co. of Pennsylvania v. Associated Int'l Ins. Co.*, 922 F.2d 516, 520 (9th Cir.1990). Accordingly, this court applies Hawaii law to the parties' insurance dispute in this case.

Section 658–5 requires that:

[i]f any action or proceeding is brought upon any issue referable to arbitration under an agreement in writing, the [trial]

2. Field asks the court to reject *Beckham* and apply the contrary case of *Chavarria v. Allstate Ins. Co.*, 749 F.Supp. 220 (C.D.Cal.1990). In *Chavarria*, the court essentially ignored the clear holding of *Beckham* for reasons which, in this court's opinion, are not persuasive.

The *Chavarria* court relied on the Supreme Court's decision in *Northbrook* to hold that a suit by a plaintiff-victim against her own insurance company for bad faith failure to settle a claim constituted a "direct action" within the meaning of section 1332(c)(1). However, *Northbrook* held only that section 1332(c)(1) destroys jurisdiction where the suit is brought *by*, rather than *against*, an insurer. *Northbrook* did not address whether the term "insured," as used in section 1332(c)(1), referred to plaintiff-victims as well as defendant-tortfeasors. In this court's view, the narrow and inapposite holding in *Northbrook* did not justify the departure from *Beckham* that the court accomplished in *Chavarria*. At least one other district court within this circuit has refused to follow *Chavarria* for the same reason. *See Basel v. Allstate Ins. Co.*, 757 F.Supp. 39 (N.D.Cal.1991); *Kimball Small Properties v. American National Fire Ins. Co.*, 755 F.Supp. 1465 (N.D.Cal.1991).

court ... shall stay the trial of the action or proceeding until the arbitration has been had in accordance with the terms of the agreement, provided the applicant for the stay is not in default in proceeding with the arbitration.

*See also Association of Owners of Kukui Plaza v. Swinerton & Walberg Co.,* 68 Haw. 98, 107, 705 P.2d 28, 35 (1985) (stay of proceedings mandatory where claim referable to arbitration under an agreement in writing and a party invokes his contractual right to have the dispute settled by arbitration). Thus, assuming the parties' have a valid and enforceable arbitration agreement, this court must grant the stay Liberty requests.

Field does not deny the policy contains a binding arbitration provision. Nor does he suggest Liberty is in default in pursuing arbitration. Instead, he contends the arbitration clause is so unconscionable as to be void for violation of public policy. Specifically, Field objects to that portion of the arbitration clause which reads:

A decision agreed to by two of the arbitrators will be binding as to:
1. Whether the covered person is legally entitled to recover damages; and
2. The amount of damages. *This applies only if the amount does not exceed the minimum limit for bodily injury liability specified by the financial responsibility law of the state in which your covered auto is principally garaged.[3] If the amount exceeds that limit, either party may demand the right to a trial.*

Liberty's Memorandum in Support of Motion to Stay, Exhibit "A" at 7 (italics added).

Field argues the italicized language renders the entire arbitration clause void for violation of public policy because it effectively gives Liberty a unilateral right to reject any award in excess of $35,000. *See*

footnote 3 *supra.* The right is unilateral, Field reasons, because only the insurer, not the insured, is likely to reject an award above that amount. Field also suggests the clause is unfair because if the arbitrators award an amount below $35,000, the insured is stuck with it and cannot demand a trial. Field asks the court to either void the entire arbitration provision or, alternatively, excise the italicized language.

■ Liberty insists the public policy issue is not yet ripe because there has been no arbitration award. It says the court should wait and see whether the arbitrators' award will exceed $35,000, thereby bringing into operation the clause allowing Liberty the alleged unilateral right to a trial. However, Field objects not only to the language authorizing trial when the award exceeds $35,000, but also to the relationship between that language and the portion of the arbitration clause which *denies* him the right to a trial whenever an arbitration award is *less* than $35,000. For purposes of Field's public policy argument, the two provisions are interrelated. Thus, because the court will ultimately be required to decide the validity of the clause regardless whether the award proves large or small, the issue is properly before the court at this time.

■ Several courts have examined arbitration clauses identical to the one in Liberty's policy, with varying results. At least two courts have upheld those clauses in the face of public policy challenges. *See Cohen v. Allstate Ins. Co.,* 231 N.J.Super. 97, 555 A.2d 21, 23–24 (1989) (noting that clause gave either party right to demand trial if award exceeded statutory minimum and finding that under New Jersey's expressed public policy, the parties could properly regulate the scope of arbitration by agreement);[4] *Roe v. Amica Mut. Ins. Co.,* 533 So.2d 279, 281 (Fla.1988) (on freedom of contract reasoning, the court found

**3.** Pursuant to Haw.Rev.Stat. § 431:10C–301(b)(1) (Supp.1990), Liberty's minimum liability is $35,000.

**4.** The *Cohen* court cited an instance where the insurer might decline to demand a trial even though the arbitration award exceeded its mini-

mum statutory liability. The court reasoned that an insurer might simply pay the award rather than risk incurring liability for pre-judgment interest in addition to liability for the award itself. *Id.*

the "parties simply agreed to binding arbitration as to any award up to $10,000 and to non-binding arbitration as to any award exceeding that limit").[5]

The parties have not cited, and this court's independent research has not discovered, any Hawaii case directly addressing this issue. However, the weight of authority supports Field's position. Presented with language identical or substantially similar to the language in Liberty's policy that allows trial only when the arbitrators' award exceeds the insurer's minimum statutory liability, at least four courts have held the language violative of public policy. *See Mendes v. Automobile Ins. Co. of Hartford*, 212 Conn. 652, 660–61, 563 A.2d 695, 698–99 (1989) (clause unfair because it fails to clearly apprise insured that certain arbitration awards are non-binding); *Schmidt v. Midwest Family Mut. Ins. Co.*, 426 N.W.2d 870, 873–75 (Minn.1988) (clause inures only to benefit of insurer, since insured not likely to assert right to *de novo* trial when award exceeds statutory minimum; clause relegates arbitration to "little more than a precursor to litigation"); *Pepin v. American Universal Ins. Co.*, 540 A.2d 21, 22–23 (R.I.1988) (finding that language allowing demand for trial only when award exceeds minimum liability circumvents the purpose of arbitration, which is to provide expedient and inexpensive mechanism for finally resolving disputes); *Chrisman v. Superior Court*, 191 Cal.App.3d 1465, 1469, 236 Cal.Rptr. 703, 705 (4th Dist.1987) (language invalid under Cal.Code Civ.Proc. § 1286.2, which declares an arbitrator's decisions are not reviewable *de novo* by the trial court); *accord, Nationwide Mut. Ins. Co. v. Marsh*, 15 Ohio St.3d 107, 111, 472 N.E.2d 1061, 1063–64 (1984) (Sweeney, J., concurring); *see also, Beynon v. Garden Grove Medical Group*, 100 Cal.App.3d 698, 712, 161 Cal. Rptr. 146, 154 (4th Dist.1980) (finding that arbitration clause in health care service plan, which was similar to clause in Liberty's policy, violated public policy because it increased expense and delay of dispute resolution and rendered arbitration a one-sided procedure weighted against the insured).

Where no Hawaii court has yet ruled on the precise question presented, this court's task is to approximate state law as closely as possible. *Gee*, 615 F.2d at 861. Hawaii's public policy, as expressed by its courts and legislature, supports this court's conclusion that if presented with the issue, the Hawaii Supreme Court would strike the language in Liberty's policy that allows *de novo* trials only when the arbitrators' award exceeds $35,000. Hawaii courts recognize that the state's public policy is to encourage arbitration as a means of settling differences and *avoiding* litigation. *Kukui Plaza*, 68 Haw. at 107, 705 P.2d at 35; *accord, Gadd v. Kelley*, 66 Haw. 431, 436, 667 P.2d 251, 255 (1983). The courts' position is founded on the Hawaii legislature's clear intent to promote dispute resolution through arbitration. *See* Haw.Rev. Stat. §§ 658–1[6] and 658–3[7] (1985).

Further, while Hawaii does allow judicial review of arbitration awards, that review is carefully circumscribed. *See* Haw.Rev. Stat. §§ 658–9[8] and 658–10[9] (1985). A

---

5. Like the *Cohen* court, the *Roe* court also gave an illustration to show why, in its opinion, the right to demand a trial was truly bilateral. The court noted that an insured might take advantage of the trial demand provision to reject an award just slightly above the statutory minimum. *Id.*

6. Section 658–1 states:
   A provision in a written contract to settle by arbitration a controversy thereafter arising out of the contract ... shall be valid, enforceable, and irrevocable, save only upon such grounds as exist for the revocation of any contract.

7. Section 658–3 authorizes actions to compel arbitration.

8. Section 658–9 authorizes courts to vacate arbitration awards only where: (1) one of the parties procured the award by corruption or fraud; (2) the arbitrators were impartial or corrupt; (3) the arbitrators engaged in misconduct prejudicing the rights of any party; or (4) the arbitrators exceeded or misused their powers.

9. Section 658–10 permits courts to modify or correct arbitration awards only where: (1) the award is based on an evident clerical error or mistake of fact; (2) the arbitrators have awarded on a matter not submitted to them; or (3) the award is imperfect as a matter of form.

court may not vacate, modify, or correct an arbitration award *except* on grounds specified in either section 658–9 or section 658–10. *In re Clawson,* 71 Haw. 76, 77, 783 P.2d 1230, 1231 (1989) (judicial review of arbitration award confined to "strictest possible limits"); *Mars Constr., Inc. v. Tropical Enterprises, Ltd.,* 51 Haw. 332, 335–36, 460 P.2d 317, 319–20 (1969).

Hawaii's public policy in favor of arbitration is particularly strong when the dispute centers on an automobile insurance policy. *See* Haw.Rev.Stat. § 431:10C–213(a) (1987 Special Pamphlet) (even in absence of agreement to arbitrate, either claimant or insured may submit to an arbitrator any dispute relating to a no-fault policy by simply filing a request to arbitrate with the circuit court in the circuit where an accident has occurred).

The *de novo* review authorized by Liberty's arbitration clause would frustrate the very purpose of arbitration, which is to provide speedy and inexpensive resolution of disputes, and would nullify the Hawaii legislature's objective in enacting Haw. Rev.Stat. Ch. 658. *See Mars Constr.,* 51 Haw. at 335–36, 460 P.2d at 319. Consequently, the court finds void for violation of Hawaii's public policy the language in Liberty's policy that allows either Field or Liberty to demand a trial if the arbitrators' award exceeds $35,000.

The court does not strike the entire arbitration clause, as that would clearly violate the intent of the parties to submit liability and damage disputes to arbitration. Therefore, the effect of the court's ruling is that *any* award by the arbitrators, whether more or less than $35,000, will be binding on both parties and judicially reviewable only to the extent specified in sections 658–9 and 658–10. Because section 658–5 requires this court to stay proceedings pending completion of the arbitration the parties agreed to, the court grants Liberty's motion for a stay pending arbitration of all proceedings in this court that relate to the parties' uninsured motorist liability and damage dispute.

### III. *Field's Request to Compel Arbitration of the Underinsured Motorist Coverage Dispute*

Having failed to convince the court to deny a stay pending arbitration of the uninsured motorist dispute, Field asks the court to also compel arbitration of the question whether or not underinsured motorist benefits are available and, if so, the amount of those benefits. Field's Response to Motion to Stay Proceedings at 4–5. However, the parties dispute whether Liberty's policy provides underinsured motorist coverage at all; Field's complaint states a claim for reformation of the policy to provide underinsured motorist coverage he admits he never purchased.

The policy provides for arbitration of disputes over: (1) whether Field is legally entitled to recover damages; and (2) the amount of damages. Memorandum in Support of Motion to Stay Proceeding, Exhibit "A" at 7. Liberty insists this language obligates it to arbitrate only liability and damage disputes, not coverage disputes.

Interpreting an arbitration clause similar to the one in Liberty's policy, this court has previously found that the term "legally entitled to recover damages" refers only to liability disputes, not coverage disputes. *See State Farm Mut. Auto. Ins. Co. v. Fernandez,* 582 F.Supp. 1283, 1286–87 (D.Haw.1984), *aff'd,* 767 F.2d 1299 (9th Cir. 1985). Field's reformation claim clearly raises a coverage dispute, i.e., whether Hawaii law entitles him to underinsured motorist coverage even though he did not purchase any. That dispute is appropriate for judicial resolution, *id.* at 1287, and the court therefore declines to compel arbitration of whether Liberty's policy should be reformed to provide Field underinsured motorist coverage. Should it appear after judicial resolution of the reformation issue that Field's underinsured motorist liability claim is arbitrable, Field may renew his motion to compel arbitration of that claim.

### CONCLUSION

For the reasons stated, the court DENIES Field's motion to remand and GRANTS Liberty's motion to stay pending

arbitration all proceedings in this court regarding the parties' uninsured motorist liability and damage dispute. The court DENIES Field's request to compel arbitration of the parties' underinsured motorist coverage dispute.

IT IS SO ORDERED.