**P.W. STEPHENS CONTRACTORS, INC., a California corporation, Plaintiff,**

v.

**MID AMERICAN INDEMNITY INSURANCE COMPANY, a Cayman Islands corporation, United Capitol Insurance Company, an Arizona corporation, Lui Tuua, Jr., an individual residing in the State of Hawaii, Oregon Electric Construction, Inc., an Oregon corporation, and United States of America, Defendants.**

Civ. No. 91–00258 HMF.

United States District Court,
D. Hawaii.

Oct. 29, 1992.

Grant K. Kidani, Kidani–Crudele, Honolulu, Hawaii, for P.W. Stephens Contractors, Inc.

Kenneth S. Robbins, Honolulu, Hawaii, for Mid American Indem. Ins. Co.

Elton John Bain, Paul W. Soenksen, Kessner Duca & Maki, Honolulu, Hawaii, for United Capitol Ins. Co.

Wayson W.S. Wong, Lee Kim & Wong, Honolulu, Hawaii, for United Coastal Ins. Co.

James P. Dandar, James C. Butt, Dandar, Manuia & Castroverde, Honolulu, Hawaii, for Oregon Elec. Const., Inc.

Daniel Bent, U.S. Atty., Theodore G. Meeker, Asst. U.S. Atty., Honolulu, Hawaii, for U.S.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

FONG, District Judge.

On September 28, 1992, the court held a hearing on cross motions for summary judgment filed by defendant Mid American Indemnity Insurance Company ("Mid American") and by plaintiff P.W. Stephens Contractors, Inc. ("P.W. Stephens").

## BACKGROUND

This is an insurance coverage dispute in which P.W. Stephens contends that an insurance policy issued by Mid American covered the underlying tort action, and that Mid American was required to defend.

The United States Navy had contracted with Oregon Electric to replace underground electric cables at Ford Island Pearl Harbor. In August 1988, Oregon Electric subcontracted with P.W. Stephens to remove and dispose of asbestos material.

On October 28, 1988, Mid American issued an insurance policy ("the Policy") to P.W. Stephens in connection with the asbestos removal contract. The United

States and Oregon Electric were listed as additional insureds under the Policy. On the same day as the Policy was issued, Mid American issued a Certificate of Insurance (the "Certificate") and a policy invoice reflecting the premium to be paid by P.W. Stephens. On November 1, 1988, P.W. Stephens paid the premium. The parties disagree on whether the Policy covered general liability or only asbestos related injuries.

On December 19, 1988, Lui Tuua, Jr. ("Tuua"), an employee of P.W. Stephens, was injured when he cut into an energized electrical cable while removing asbestos from the cable. In August 1989, Tuua sued the United States and Oregon Electric, both of which asserted indemnification claims against P.W. Stephens. *Lui Tuua, Jr. v. United States of America, et al.,* Civil No. 89–00634 ACK (the "tort action"). P.W. Stephens tendered the defense of the tort action to Mid American. Mid American refused to defend and denied coverage, claiming that the policy only covered injuries resulting from exposure to asbestos.

On January 10, 1991, Judge Alan C. Kay granted summary judgment for the United States and Oregon Electric on the indemnification claim. The United States and Oregon Electric have settled with Tuua, but maintain their indemnification claims against P.W. Stephens.

## DISCUSSION

### I. *Choice of Law*

■ Initially, this court must decide which state law to apply in interpreting the policy. P.W. Stephens argues that Texas law should apply, while Mid American argues for application of Hawaii law. The insurance policy has no choice of law provision.

■ A federal court sitting in diversity must apply the choice of law rules adopted by the forum state. *Klaxon v. Stentor Electric Manufacturing Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941). The Hawaii Supreme Court has held that a court must assess "the interests and policy factors involved" to determine the law that should be applied in a particu-

lar case. *Peters v. Peters,* 63 Haw. 653, 664, 634 P.2d 586 (1981). In assessing these interests, the Hawaii Supreme Court has looked to the Restatement (Second) of Conflict of Laws (1971) for guidance. *Peters,* 63 Haw. at 667, 634 P.2d 586 (looking to but rejecting the Rest.2d approach); *Airgo, Inc. v. Horizon Cargo Transport, Inc.,* 66 Haw. 590, 595, 670 P.2d 1277 (1983) (adopting the Rest.2d position).

The discussion of a similar choice of law question by the Ninth Circuit in *Industrial Indemnity Ins. Co. v. United States,* 757 F.2d 982 (1985) is helpful. There, the court was predicting which law the Idaho Supreme Court would apply in an insurance case arising from the collapse of the Teton Dam in Idaho. The insurance contract had been issued in Illinois, but the insured property and the damage were located in Idaho. *Id.* at 986. The court applied the Restatement, and decided that Idaho law should govern. The court reasoned:

"[The insurance company] argues that Illinois is the state with the most significant contacts. We disagree. The place of contracting is relatively insignificant when there is no other significant relationship between the transaction and that place. Rest.2d § 188 comment e. None has been shown here.

When insurance is involved, the principal location of the insured risk normally is the state whose law applies. Rest.2d § 193. That state has a natural interest in the issues that arise. *Id.* comment c.

*Id.*

In this case, the relevant contacts with Hawaii are that the accident occurred in Hawaii during an asbestos replacement contract to be performed entirely in Hawaii. Thus, the "insured risk" was entirely in Hawaii. The relevant contacts with Texas are that the insurance contract was drafted in Texas by a Texas based insurance company. Additionally, Texas has apparently required that the policy include standard language that tells a policy buyer of his or her rights under Texas laws.

In assessing the policy interests of the two states, the court notes that Hawaii has a public policy interest in defining the

rights of insurers and insureds under insurance policies affecting Hawaii. Texas may have a policy interest in applying Texas laws to insurance contracts made in Texas, but that interest is apparently not strong here because it is Mid American which asks the court to apply Hawaii law.

After weighing these contacts and policies, the court finds that Hawaii law should be applied.

The analysis is not changed by two other decisions from this district cited by P.W. Stephens. In *Field v. Liberty Mut. Ins. Co.*, 769 F.Supp. 1135, 1138 (D.Haw.1991), the court applied Hawaii law to a dispute between a Hawaii insured and a Massachusetts insurer over a Hawaii auto insurance policy. The court tersely stated the rule of law as follows: "Under Hawaii's choice of law rules, the law of the state where the insurance contract is made governs this court's determinations of the parties' rights." *Id.* (citing *Smith v. State Farm Ins. Co.*, 615 F.Supp. 453, 455 (D.Haw. 1985). In the cited passage of *Smith*, the court stated: "Generally, the validity and construction of an insurance contract is determined by the law of the state where the contract was made." *Id.* (citing *Lowery v. Kovac*, 320 F.Supp. 215 (D.Conn. 1970)).

P.W. Stephens argues that these statements from *Field* and *Smith* establish a *per se* rule that insurance contracts are governed by the law of the insurer's home state.

This court rejects this argument on two grounds. First, the *Field* and *Smith* decisions did not use the choice of law rules of the forum state (Hawaii) as required by the Supreme Court's decisions in *Erie* and *Klaxon*. Thus, if the result from applying *Field*'s "rule" conflicts with the result from applying Hawaii's interest balancing approach, then *Field* must yield.

Second, even if *Field* and *Smith* are viewed as a shortcut to reaching the correct choice of law result, they can be reconciled with the result today. *Field* relied on *Smith* which in turn relied on *Lowery*. The *Lowery* court's version of the "general rule" excerpted in *Smith* was as follows:

"The general rule is that, *in the absence of a showing that an insurance contract is to have its operative effect in a jurisdiction other than the place it was entered into*, the validity and construction of the contract are determined by the law of the state where the contract was made." *Id.* at 217 (citation omitted, emphasis added). The emphasized portion of the quoted rule from *Lowery* applies in this case. Here, the insurance contract did have its operative effect outside of Texas. The insured risk was to workers in Hawaii. Thus, assuming that *Field* and *Smith* have some utility as a short cut in choice of law decisions, they are inapposite to the situation before the court today.

Therefore, the court DENIES P.W. Stephens' motion for a partial summary adjudication that Texas law governs the insurance contract. Hawaii law will be applied to this case.

## II. *Scope of the Policy Coverage*

■ P.W. Stephens contends that the Policy was a comprehensive general liability policy which covered Tuua's injury. Mid American argues that the Policy only covered asbestos related injuries, and that Tuua was not injured by asbestos. Mid American argues further that there was no coverage of Tuua's injury because Tuua was an employee of P.W. Stephens. Because the court adopts Mid American's second argument, it need not address the first.

■ Interpretation of an insurance policy begins with an examination of the policy language. *Sturla, Inc. v. Fireman's Fund Ins. Co.*, 67 Haw. 203, 207, 684 P.2d 960, 962 (1984). Ambiguities must be resolved against the insurer because insurance contracts are contracts of adhesion. *Id.* at 209, 684 P.2d 960. However, a mere assertion of ambiguity is not sufficient. Rather, the contract taken as a whole must be reasonably subject to differing interpretation. *Id.* "Absent an ambiguity, the terms of the policy should be interpreted according to their plain, ordinary, and accepted sense in common speech." *Hawaiian Ins. & Guar. Co., Ltd.*

v. *Clerk of the First Circuit Court*, 68 Haw. 336, 342, 713 P.2d 427 (1986). The court must "enforce the objectively reasonable expectations of parties claiming coverage under insurance contracts, which are construed in accord with the reasonable expectations of a layperson." *Hawaiian Ins. & Guar. Co. v. Fin. Sec. Ins. Co.*, 72 Haw. 80, 88, 807 P.2d 1256 (1991) (internal quotation and citation omitted). The interpretation of contract language is a matter of law, and therefore appropriate in a pretrial motion such as a motion for summary judgment. *William & James Brown & Co. v. McGran*, 14 Pet. 479, 39 U.S. 479, 493, 10 L.Ed. 550 (1840).

Mid American contends that the employee exclusion clause, MGL 1011, excluded recovery of Tuua's injury. That clause provides as follows:

## EMPLOYEE LIABILITY EXCLUSION

It is agreed that the exclusion relating to bodily injury to any employee of the Insured is deleted and replaced by the following:

This insurance does not apply:

(1) to bodily injury to any employee of the Insured arising out of and in the course of his employment for which the insured may be held liable as an employer or in any other capacity; ....

In response, P.W. Stephens contends that (1) the exclusion is ambiguous because it does not have the effective date and policy blanks filled in; (2) the incidental contract provision broadens the coverage to cover employees; and (3) the exclusion does not apply to the United States or Oregon Electric which were additional insureds under the Policy because Tuua was not their employee.

Turning to P.W. Stephens' first argument, the court finds that the blanks on the exclusion page do not create any ambiguity. The Renewal page of the Policy clearly states that endorsement MGL 1011, the employee exclusion clause, is a part of the Policy and was effective on the day of Tuua's injury.

P.W. Stephens also contends that the incidental contract provision covered Tuua's injuries, or at least rendered the employee exclusion ambiguous. The incidental contract provision is under a section entitled "Exclusions" and states: "This insurance does not apply ... to liability assumed by the insured under any contract or agreement except an incidental contract; ...." P.W. Stephens argues that its contract with Oregon Electric was an "incidental contract" and that therefore the employee exclusion does not apply.

However, under Hawaii law, an exclusion like the incidental contract exclusion cannot create coverage, but may only "serve to restrict and shape the coverage otherwise afforded." *Sturla Inc. v. Fireman's Fund Ins. Co.*, 67 Haw. 203, 209, 684 P.2d 960 (1984) (quoting from *Weedo v. Stone–E–Brick, Inc.*, 81 N.J. 233, 237, 405 A.2d 788, 790 (1979). Thus, an incidental contract would not be entitled to any more coverage than that afforded by the rest of the policy. Therefore, the incidental contract provision cannot save P.W. Stephens from the employee exclusion.

P.W. Stephens' third argument, that the United States and Oregon Electric were not affected by the employee exclusion, does not save P.W. Stephens' case either. The employee exclusion clearly states that it applies to claims for an employee's bodily injury for which P.W. Stephens may be liable either as an employer or in any other capacity. The indemnity claims of the United States and Oregon Electric are claims which seek to hold P.W. Stephens liable for the injuries of a P.W. Stephens' employee. Thus, these claims are not covered under the Policy.

The court notes however, that the United States and Oregon Electric may have independent claims as additional insureds that they may pursue against Mid American. Because such claims are not before the court, the court need not consider whether the employee exclusion would apply to those claims.

Accordingly, Mid American was not required to provide coverage to P.W. Stephens for Tuua's injuries, and the court

GRANTS Mid American's motion for summary judgment and DENIES P.W. Stephens' motion for summary judgment.

### III. *Duty to Defend Under the Policy*

P.W. Stephens also contends that even if coverage could have been ultimately denied for Tuua's injury, Mid American owed a greater duty to defend the action.

 The scope of the duty to defend is broader than the scope of coverage. *Ticor Title Ins. Co. of California v. American Resources, Ltd.*, 859 F.2d 772, 774–75 (9th Cir.1988) (applying Hawaii law). For example, an insurer may not refuse to defend an insured against a claim simply because the insured has a good affirmative defense to that claim. *Id.* However, an insurer need not defend against claims that do not come within the policy coverage. *Id.*

Because Tuua's claim was excluded by the employee exclusion, the court finds that Mid American did not owe a duty to defend P.W. Stephens, and GRANTS Mid American's motion for summary judgment and DENIES P.W. Stephens' motion for summary judgment.

### IV. *Breach of the Covenant of Good Faith and Fair Dealing*

P.W. Stephens also alleged a breach of the covenant of good faith and fair dealing, apparently hoping for the application of Texas law which allows such a claim. However, Hawaii does not recognize this cause of action. *Paulson, Inc. v. Bromar, Inc.*, 775 F.Supp. 1329, 1336 (D.Haw.1991). Therefore, the court GRANTS Mid American's motion for summary judgment with respect to this claim.

### CONCLUSION

This order has granted summary judgment in favor of Mid American with respect to all claims by P.W. Stephens. The court's ruling does not affect any direct claims against Mid American by the additional insureds, the United States and Oregon Electric.

IT IS SO ORDERED.