**COMMERCIAL UNION INSURANCE COMPANY, Plaintiff,**

v.

**Leon HORNE, Carol Horne and Homeowners Marine Credit, Defendants.**

**No. 91 Civ. 4430 (RPP).**

United States District Court, S.D. New York.

Revised March 25, 1992.

Donovan Parry Walsh & Repetto, New York City by David R. Hornig, Vincent G. Horan, for plaintiff.

Suisman, Shapiro, Wool, Brennan & Gray, P.C., New London, Conn. by Robert B. Keville, for defendants Leon Horne and Carol Horne.

## OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.

Plaintiff Commercial Union Insurance Company seeks a declaratory judgment against Defendants Leon and Carol Horne, declaring a marine insurance policy void and thereby precluding any recovery by Defendants for the loss of their yacht.[1] This Court has admiralty and maritime jurisdiction under 28 U.S.C. § 1333. Plaintiff and Defendants each move pursuant to Federal Rule of Civil Procedure 12(c) for

1. On November 22, 1991, Plaintiff's action as against Homeowners Marine Credit was voluntarily discontinued pursuant to Fed.R.Civ.P. 41(a)(1). "Defendants" hereafter refers to Leon and Carol Horne.

2. Defendants motion for leave to file an amended answer is granted and deemed as having been filed on March 1, 1992. In the amended

judgment on the pleadings. Because no material issue of fact remains to be resolved, this Court may dispose of the case based solely on matters contained in the pleadings.[2] For the reasons set forth below, judgment in favor of the Plaintiff is granted.

## BACKGROUND

Defendants used an insurance agent, Alliance Brokerage Corporation, to procure an insurance policy on their yacht from Plaintiff insurance company providing coverage for the period from December 10, 1989 through December 10, 1990. This policy is attached to the complaint as Exhibit 1. On or about May 5, 1990, the yacht was allegedly lost at sea.

The insurance policy contained a provision entitled "Navigation Limits," which provided:

You agree to use the yacht only in the following area:

Coastwise and Inland waters of the U.S. between Eastport, Maine and Cedar Keys, Florida, not to exceed 100 miles offshore from the nearest point of land.

Navigation limits are extended to include the coastal waters of Puerto Rico, the U.S. and British Virgin Islands, and Windward Islands, not south of Grenada.

Under a separate heading entitled "Endorsements Attached," a "Chartering Coverage" provision was added, granting Defendants permission:

to occasionally day charter this yacht, but warranted not to exceed six passengers per day charter; warranted not to exceed 5 day charters per year and warranted that the yacht be in charge of and operated by the assured or a licensed captain at all times during any such day charter.

answer, Defendants seek to clarify that they lack sufficient knowledge and information to dispute Plaintiff's assertion that Defendants intent to charter the yacht was not disclosed to Commercial Union. Amended Answer ¶ 30. This question of fact, however, is not material to the disposition of the parties' motions for judgment on the pleadings.

Following the "Chartering Coverage" provision, a separate "Trip Endorsement" provided that, "in consideration of an additional premium ... the Navigation Limits are extended" as follows:

> departing from: West Palm Beach on or about: 12–10–89
>
> arriving at: Caribbean on or about: 12–15–89 navigation limits while there: Puerto Rico, U.S. & B.V.I., Leeward & Windward Islands, not south of Grenada
>
> returning to: Essex, Connecticut on or about: 05–15–90.

The controversy in this case surrounds an agreement entered into on November 28, 1989 whereby Defendants chartered the yacht to Coastline Sailing School and Yacht Charterers Incorporated for the five month period from December 12, 1989 to May 12, 1990. Plaintiff contends that because the Chartering Coverage provision of the policy allowed only five single-day charters of the yacht, Defendants breached their contract with Plaintiff by entering into the five-month chartering agreement, nullifying the insurance coverage. Defendants claim that they had notified their broker of their intent to charter the yacht and that the loss occurred within the terms of the Trip Endorsement contained in the policy. Therefore, Defendants contend, they are entitled to recovery for the loss of the yacht.

## DISCUSSION

Since the policy here sued upon is a maritime contract, the Admiralty Clause of the Constitution brings it within federal jurisdiction. *Wilburn Boat Co. v. Fireman's Ins. Co.*, 348 U.S. 310, 313, 75 S.Ct. 368, 370, 99 L.Ed. 337 (1954). A federal court sitting in admiralty must apply federal choice of law rules. *State Trading Corp. of India, Ltd. v. Assuranceforenin-gen Skuld*, 921 F.2d 409, 414 (2d Cir.1990). The Supreme Court has held that the scope and validity of marine insurance policy provisions and the consequences of breaching them are determined by state law. *Wilburn*, 348 U.S. at 316, 75 S.Ct. at 371 (holding that state law determines whether warranty in marine insurance policy was breached and, if so, what the effect of breach would be).

In *Skuld*, the Second Circuit discussed federal choice of law analysis for maritime law cases, although the court found it unnecessary to decide which choice of law rule applied in that case. Several factors listed in the opinion favor the application of Connecticut law to the instant case.[3] For example, it is commonly held that the law of the state with the most significant nexus with the insurance contract must be applied. *Healy Tibbitts Constr. Co. v. Foremost Ins. Co.*, 482 F.Supp. 830, 835 (N.D.Cal.1979), *cited in Skuld*, 921 F.2d at 417. In addition, an element of the choice of law analysis set forth in the Restatement of Conflict of Laws is the domicile and residence of the parties. Restatement (Second) of Conflict of Laws § 188(2) (1971). The fact that one of the parties is domiciled in a particular state assumes greater importance when combined with other contacts to that state. *Id.* cmt. e. Here, the Defendants are residents of Connecticut and the insurance contract acknowledged that the yacht would return to that state after a five month trip.[4]

Under Connecticut law, where the words of a marine insurance policy are plain and unambiguous, the language from which the intention of the parties is to be

---

3. The parties did not address choice of law in their pleadings and the contract did not include a choice of law provision.

4. The place where a contract is issued is also relevant for choice of law purposes. *Eagle Leasing Corp. v. Hartford Fire Insurance Co.*, 540 F.2d 1257, 1261 (5th Cir.1976), *cert. denied*, 431 U.S. 967, [97 S.Ct. 2926, 53 L.Ed.2d 1063] (1977) *cited in Skuld*, 921 F.2d at 417. The contract in this case was probably issued in New York, where the Plaintiff is located. However, even under New York law the Plaintiff would prevail in this case. *See Braswell Shipyards, Inc. v. Southport Marine, Inc.*, No. 76 Civ. 2470 (S.D.N.Y. July 2, 1979) (marine insurance contracts demand strict compliance and breach of warranty voids policy irrespective of whether breach increases risk of loss); *see also* N.Y. Ins. Law § 3106(c) (McKinney 1985) (breach of warranty in marine insurance contract need not be material to loss to void coverage).

deduced must be accorded its natural and ordinary meaning and courts cannot indulge in forced construction. *United States Surgical Corp. v. United States Fire Ins. Co.*, No. 28 20 11, 1990 WL 277471, at *1, 1990 Conn.Super. LEXIS 1361, at *3–4 (Conn.Super.Ct. Oct. 3, 1990) (applying general rules of contract to interpretation of marine insurance contract).

In plain and unambiguous language, the policy which provided property and liability coverage prohibited charters for periods longer than one day. Thus, Defendants breached the policy when they chartered their yacht to a sailing school for a five-month period. The terms of the insurance contract in this case placed clear restrictions on the use of the yacht, prohibiting its use for commercial and business purposes. A modification allowed day chartering of the yacht only under specified conditions. Separate provisions governed the Navigation Limits on the use of the yacht. Defendants claim that the Trip Endorsement evidences "that in fact there was disclosure to [Plaintiff] as to the intent and/or agreement of the Hornes to *charter*" their yacht for the five month period. Def. Mem. in Supp. at 4 (emphasis supplied). Defendants contend that "the reasonable insured" would look at the endorsement extending the Chartering Coverage to permit one-day charters and the extended Trip Endorsement immediately following it and "could reasonably interpret that the loss of the yacht during this period would in fact be covered." They argue that these two provisions at the very least create an ambiguity as to whether the policy covered their five-month charter. *Id.* at 8–9.

There is no ambiguity in the policy. The extension of the Navigation Limits did not silently suspend the other provisions of the insurance policy. Specifically, while the Trip Endorsement explicitly extended the Navigation Limits by referring to that provision by name, it did not refer to, let alone extend, the Chartering Coverage. That the Trip Endorsement covered the same dates as the charter agreement entered into by Defendants neither creates an ambiguity

nor evidences Plaintiff's knowledge that Defendants intended to charter their yacht during that period. *See United States Surgical Corp.*, 1990 WL 277471, at *1–2, 1990 Conn.Super. LEXIS 1361, at *4 (question is not what intention existed in minds of parties, but what intention is expressed in language used).[5]

The contract also provided that "[i]f the yacht is used for charter or to carry persons or property for a fee or for any other commercial or business purposes whatsoever, the policy will terminate without notice to you, unless such use is accepted by us in writing." That provision was modified by the Chartering Coverage only to allow five single-day charters. By chartering the yacht for a period of five months without receiving an acceptance in writing as required by the policy, the Defendants breached an express promissory warranty and violated the terms of the contract. Accordingly, they may not recover for the loss of the yacht.

## CONCLUSION

Based on the uncontested facts contained in the pleadings, Plaintiff is not liable under insurance policy C–JY—13120–9/000 for the loss of the Defendants' yacht. Accordingly, Plaintiff's motion is granted, and Defendants' motion is denied.

IT IS SO ORDERED.

---

5. The liability of Alliance Brokerage Corporation to Defendants is not addressed herein.