ORDER GRANTING INTERVENOR-DE-FENDANT’S MOTION FOR SUMMARY JUDGMENT, DENYING PLAINTIFF’S MOTION FOR SUMMARY JUDGMENT, AND DENYING INTERVENOR-DEFENDANT’S REQUEST FOR ATTORNEYS’ FEES AND COSTS
 

 KAY, Chief Judge.
 

 BACKGROUND
 

 This case presents the question whether the marine insurance policy HI11-000023300-00 (“Policy”) issued by Plaintiffs
 
 [1]
 
 to defendant Allan Chatham (“Chatham”) on Chatham’s yacht PRIME TIME covers a collision between PRIME TIME and the yacht CANE FIRE, owned by intervenordefendant Christopher Austin-Harmes (“Austin-Harmes”), which collision occurred on August 7, 1994 during a 1994 Kenwood Cup Hawaii International Ocean Racing Series (“Kenwood Cup”) race in Hawaii.
 

 Specifically, the question raised is whether the 1994 Kenwood Cup race at issue had an “international YRU jury” within the meaning of General Exclusion 2.e. of the Policy.
 
 [2]
 
 If so, there is no coverage.
 

 On November 17, 1994, following the collision, Austin-Harmes filed suit against Chat-ham in Hawaii state court for the damage caused to CANE FIRE by PRIME TIME. On November 23,1994, plaintiff Barber, individually and as the representative of Lloyd’s, commenced the instant declaratory judgment action. On March 10, 1995, Lloyd’s added Commercial Union as an additional plaintiff because Commercial Union underwrote 50% of the Policy.
 

 On March 14, 1995, Chatham and his wife filed a voluntary bankruptcy petition under Chapter 7
 
 (In re Chatham,
 
 Case No. 95-00349). On June 14,1995, Chatham received
 
 *784
 
 a discharge in his bankruptcy proceeding, thereby insulating him from any risk of personal liability for the collision. On July 12, 1995, Austin-Harmes moved to intervene as a defendant in the instant action, which motion was granted by the Magistrate by order filed October 13,1995.
 

 On January 30, 1996, Plaintiffs moved for summary judgment on the basis that coverage is excluded because the 1994 Kenwood Cup race had an “international YRU jury.” On January 31, 1996, Austin-Harmes also moved for summary judgment, on the basis the 1994 Kenwood Cup race did
 
 not
 
 have an “international YRU jury.”
 
 [3]
 

 On May 13, 1996, the Court heard the parties’ motions for summary judgment. Plaintiffs and Austin-Harmes appeared through counsel. Upon considering the papers filed by all parties, the arguments of counsel, and the record, the Court hereby DENIES Plaintiffs’ motion and GRANTS Austin-Harmes’ motion. The Court DENIES Austin-Harmes’ request for attorneys’ fees.
 

 SUMMARY JUDGMENT STANDARD
 

 Summary judgment shall be granted where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). One of the principal purposes of the summary judgment procedure is to identify and dispose of factually unsupported claims and defenses.
 
 Celotex Corp. v. Catrett, 477
 
 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).
 

 The United States Supreme Court has declared that summary judgment must be granted against a party who fails to demonstrate facts to establish an element essential to his case where that party will bear the burden of proof of that essential element at trial.
 
 Cebtex,
 
 477 U.S. at 322, 106 S.Ct. at 2552. “If the party moving for summary judgment meets its initial burden of identifying for the court the portions of the materials
 

 on file that it believes demonstrate the absence of any genuine issue of material fact [citations omitted], the nonmoving party may not rely on the mere allegations in the pleadings in order to preclude summary judgment.”
 
 T.W. Elec. Serv. v. Pacific Elec. Contractors Ass’n,
 
 809 F.2d 626, 630 (9th Cir.1987).
 

 Rather, Rule 56(e) requires that the nonmoving party set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there- is a genuine issue for trial.
 
 T.W. Ebc. Serv.,
 
 809 F.2d at 630. At least some “significant probative evidence tending to support the complaint” must be produced.
 
 Id.
 
 Legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment.
 
 British Airways Bd. v. Boeing Co.,
 
 585 F.2d 946, 952 (9th Cir.1978).
 

 The standard for a grant of summary judgment reflects the standard governing the grant of a directed verdict.
 
 See Eisenberg v. Ins. Co. of North America,
 
 815 F.2d 1285, 1289 (9th Cir.1987) (citing
 
 Anderson v. Liberty Lobby, Inc.,
 
 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986)). Thus, the question is whether “reasonable minds could differ as to the import of the evidence.”
 
 Anderson, 477
 
 U.S. at 250-51, 106 S.Ct. at 2511.
 

 The Ninth Circuit has established that “[n]o longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment.”
 
 California Architectural Bldg. Products, Inc. v. Franciscan Ceramics, Inc.,
 
 818 F.2d 1466, 1468 (9th Cir.1987). Moreover, the United States Supreme Court has stated that “[w]hen the moving party has carried its burden under Rule 56(e), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.”
 
 Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
 
 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Indeed, “if the faetu
 
 *785
 
 al
 
 context makes the
 
 nonmoving party’s claim
 
 implausible,
 
 that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue
 
 for
 
 trial.”
 
 Franciscan Ceramics,
 
 818 F.2d at 1468 (emphasis in original) (citing
 
 Matsushita,
 
 475 U.S. at 587, 106 S.Ct. at 1356). Of course, all evidence and inferences to be drawn therefrom must be construed in the light most favorable to the nonmoving party.
 
 T.W. Elec. Serv.,
 
 809 F.2d at 630-31.
 

 DISCUSSION
 

 As noted above, the question raised is whether the 1994 Kenwood Cup race at issue had an “international YRU jury” within the meaning of General Exclusion 2.e. of the Policy, which excludes coverage for “[s]ail-boat races where there is an international YRU jury.”
 

 I.
 
 BACKGROUND
 

 The International Yacht Racing Union (“IYRU”) is the international governing body for the sport of racing sailing. The United States Sailing Association (“U.S. Sailing”) is the national governing body for the United States and is a member of the IYRU. The Hawaii Yacht Racing Association is a local organization comprised of all sailing clubs in Hawaii. The Royal Hawaiian Ocean Racing Club and the Waikiki Yacht Club, the two organizers of the 1994 Kenwood Cup race, both are members of U.S. Sailing and the Hawaii Yacht Racing Association.
 

 The IYRU Rules Committee drafts the International Yacht Racing Rules (“IYRR”), which are amended and published every four years by the IYRU in accordance with its regulations. U.S. Sailing has adopted the IYRR. The 1994 Kenwood Cup race was governed by the IYRR. In addition, entrants had to agree to comply with the IYRU rules.
 

 Pursuant to § 1.2 of the IYRR, races shall be organized by (a) the IYRU; (b) a member national authority of the IYRU; (c) a club or regatta committee affiliated to a national authority; (d) a class association either with the approval of a national authority or in conjunction with an affiliated club or regatta committee; or (e) an unaffiliated body in conjunction with an affiliated club or regatta committee. Plaintiffs Mot., Exh. C. The 1994 Kenwood Cup race was organized pursuant to subsection (c) — by two clubs, the Royal Hawaiian Ocean Racing Club and the Waikiki Yacht Club, affiliated with U.S. Sailing.
 

 Pursuant to § 1.4 of the IYRR, the organizing authority can establish a protest committee to receive, hear and decide protests and other matters arising from the race. The protest committee may be:
 

 (a) the race committee itself; or
 

 (b) a sub-committee thereof appointed by the race committee and consisting of its own members, or others, or a combination of both; or
 

 (c) a jury, which is a
 
 protest committee
 
 separate from and independent of the race committee, appointed by the organising authority or the race committee; or
 

 (d) an international jury appointed by the organising authority in accordance with Appendix A5.
 

 Plaintiffs Mot., Exh. C.
 

 Appendix A5 states in relevant part:
 

 1.1 An international jury shall consist of a chairman, a vice-chairman, and other members sufficient for a total membership of at least five____
 

 2.1 The officers and other members of the jury shall be appointed by the organising authority____
 

 2.3 A majority shall be international judges certified by the IYRU.
 

 2.4 Not more than two members ... shall be from the same country----
 

 Plaintiffs Mot., Exh. C at 77-78.
 

 The 1994 Kenwood Cup race jury had seven members — two from the United States and one each from Canada, the United Kingdom, Australia, Japan and New Zealand— each of whom was an IYRU certified judge. The parties do not dispute that the 1994 Kenwood Cup race had an “international jury” under the meaning of IYRR § 1.4(d).
 
 See
 
 Austin-Harmes’ Stmt, in Opp. at ¶ 19; Plaintiffs Mot., Exh. B (Morrison Depo.) at
 
 *786
 
 24:6-16 (race’s international jury was constituted in accordance with IYRR §§ 1.4(d), I. 5(a) and Appendix A5 and acted in accordance with Appendix A5).
 

 The only question is whether the 1994 Kenwood Cup race’s “international jury” constituted an “international YRU jury” under the Policy.
 

 II.
 
 JURISDICTION AND CHOICE OF LAW
 

 Preliminarily, the Court notes the parties do not dispute that the Court has admiralty jurisdiction over this matter and that Hawaii state law governs. The Court agrees. Marine insurance policies are maritime contracts within federal admiralty jurisdiction.
 
 New England Mut. Marine Ins. Co. v. Dunham,
 
 78 U.S. (11 Wall.) 1, 26, 20 L.Ed. 90 (1870);
 
 Wilburn Boat Co. v. Fireman’s Fund Ins. Co.,
 
 348 U.S. 310, 313, 75 S.Ct. 368, 370, 99 L.Ed. 337 (1955);
 
 Royal Ins. Co. of America v. Pier 39, Ltd. Partnership,
 
 738 F.2d 1035 (9th Cir.1984);
 
 Reliance Ins. Co. v. Wilson,
 
 1990 A.M.C. 2672 (N.D.Cal.1990).
 

 In addition, Hawaii law governs the resolution of this dispute in light of the fact that although the insurers are British, the Policy was delivered to Chatham, a Hawaii resident, in Hawaii, and the collision took place in Hawaii.
 
 See Commercial Union Ins. Co. v. Horne,
 
 787 F.Supp. 337, 339 (S.D.N.Y.1992) (federal court sitting in admiralty applies federal choice of law rules);
 
 Wilburn Boat Co. v. Fireman’s Fund Ins. Co.,
 
 348 U.S. 310, 316, 75 S.Ct. 368, 371, 99 L.Ed. 337 (1955) (scope and validity of marine insurance policy provisions and consequences of their breach are questions governed by state law);
 
 Albany Insurance Co. v. Anh Thi Kieu,
 
 927 F.2d 882, 891 (5th Cir. 1991) (“Modern choice of law analysis, whether maritime or not, generally requires the application of the law of the state with the ‘most significant relationship’ to the substantive issue in question.”) (citing
 
 Restatement (Second) of Conflict of Laws
 
 § 6 (1980));
 
 Healy Tibbitts Constr. Co. v. Foremost Ins. Co.,
 
 482 F.Supp. 830, 835 (N.D.Cal. 1979) (same);
 
 see, e.g., Gulf Tampa Drydock Co. v. Great Atlantic Ins. Co.,
 
 757 F.2d 1172, 1174 (11th Cir.1985) (applying Florida law to marine insurance coverage dispute where insurer was Canadian, insured was Florida corporation doing business in Florida, alleged negligent repairs were performed in Florida, and resulting collision occurred in Louisiana).
 

 III.
 
 HAWAII LAW
 

 Under Hawaii law, “[(Insurance policies are subject to the general rules of contract construction ...; the terms of the policy should be interpreted according to their plain, ordinary, and accepted sense in common speech unless it appears from the policy that a different meaning is intended.”
 
 First Ins. Co. of Hawaii, Inc. v. State of Hawaii,
 
 66 Haw. 413, 423-24, 665 P.2d 648 (1983) (citing
 
 Indus. Indem. Co. v. Aetna Casualty & Surety Co.,
 
 465 F.2d 934 (9th Cir.1972)).
 

 The court’s duty is “to enforce ‘the objectively reasonable expectations’ of parties claiming coverage under insurance contracts, which ‘are construed in accord with the reasonable expectations of a layperson.’ ”
 
 Hawaiian Ins. & Guaranty Co., Ltd. v. Financial Security Ins. Co.,
 
 72 Haw. 80, 87-88, 807 P.2d 1256 (1991) (citing
 
 Fortune v. Wong,
 
 68 Haw. 1, 702 P.2d 299 (1985) and
 
 Sturla, Inc. v. Fireman’s Fund Ins. Co.,
 
 67 Haw. 203, 684 P.2d 960 (1984)).
 

 The interpretation of an insurance policy begins with an examination of the policy language and presents a mixed question of law and fact.
 
 Chicago Ins. Co. v. Griffin,
 
 817 F.Supp. 861, 864 (D.Haw.1993);
 
 State Farm Mut. Auto Ins. v. Fernandez,
 
 767 F.2d 1299, 1301 (9th Cir.1985).
 

 It is for the court initially to determine as a matter of law whether the policy provision at issue is ambiguous.
 
 State Farm Mut. Auto Ins. v. Fernandez,
 
 767 F.2d at 1301. However, “[t]he court must ... respect the plain terms of the policy and not create ambiguity where none exists.”
 
 Crawford v. Ranger Ins. Co.,
 
 653 F.2d 1248, 1250 (9th Cir.1981) (quoted in
 
 First Ins. Co. of Hawaii, Inc.,
 
 66 Haw. at 424, 665 P.2d 648 (1983)).
 

 “[Ajmbiguity is found ... only when the contract taken as a whole is reasonably
 
 *787
 
 subject to differing interpretation.”
 
 Fortune v. Wong,
 
 68 Haw. 1, 10, 702 P.2d 299 (1985) (internal quotations omitted);
 
 see also
 
 Haw. Rev.Stat. § 431:10-237 (“Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, restricted, or modified by any rider, endorsement or application attached to and made a part of the policy.”).
 

 If the court finds the provision at issue is ambiguous, it then applies the principle that because insurance policies are contracts of adhesion, they must be construed liberally in favor of the insured and any ambiguities must be resolved against the insurer.
 
 Fortune v. Wong,
 
 68 Haw. 1, 10, 702 P.2d 299 (1985);
 
 Sturla, Inc. v. Fireman’s Fund Ins. Co.,
 
 67 Haw. 203, 209, 684 P.2d 960 (1984);
 
 Dawes v. First Ins. Co. of Hawaii Ltd.,
 
 77 Hawai‘i 117, 121, 883 P.2d 38 (1994).
 

 This is particularly true for exclusions or limitations on liability.
 
 See First Ins. Co. of Hawaii Ltd. v. Continental Casualty Co.,
 
 466 F.2d 807, 809 (9th Cir.1972) (“[I]nsurance exclusions are narrowly construed against the insurer, and the insurance company must prove that the exclusion clause is applicable.”);
 
 Yamaguchi v. State Farm Mut. Automobile Ins. Co.,
 
 515 F.Supp. 186, 199 (D.Haw.1980) (“[I]t is very well settled that if an insurer wishes to limit its liability under its policy, it has the duty to do[] so in language that is plain and clear to the lay purchaser of the policy. The rule is that all provisions, conditions or exceptions which in any way tend to limit or defeat liability under the policy should be construed most favorably to the insured.”) (internal citations omitted),
 
 affd in part and rev’d in part on other grounds,
 
 706 F.2d 940 (9th Cir.1983);
 
 AVEMCO Ins. Co. v. Chung,
 
 388 F.Supp. 142, 147 (D.Haw.1975) (“It is now almost axiomatic under Hawaiian law that ... [insurance policies] must be construed as liberally as possible in the insured’s interest and as strictly as possible against the insurer, where a policy provision excludes or purports to exclude areas from coverage. Forfeiture of insurance coverage is so disfavored that the courts are ‘always prompt to seize hold of any circumstance to uphold the validity of a policy.’ ”) (quoting
 
 Colburn v. United States Fidelity & Guaranty Co.,
 
 25 Haw. 536, 543 n. 7 (1920)) (footnote omitted).
 

 IV.
 
 PARTIES’INTERPRETATIONS
 

 The task for the Court essentially is to determine whether each party’s interpretation of the Policy is reasonable. Plaintiffs prevail only if their interpretation is reasonable and Austin-Harmes’ is not. If both parties’ interpretations are reasonable, the Policy is ambiguous as a matter of law, and the ambiguity must be resolved against the insurer. If Austin-Harmes’ is the only reasonable interpretation, clearly he prevails.
 

 The Policy excludes coverage for races where there is an “international YRU jury.” Plaintiffs contend that because the 1994 Ken-wood Cup race jury was an “international jury” as constituted under the International Yacht Racing Rules promulgated by the IYRU, it was an “international YRU jury” within the meaning of the exclusion.
 

 Austin-Harmes responds that Plaintiffs’ equation of “international YRU jury” with “international jury” renders “YRU” superfluous, in violation of the maxim that “[e]ach word is deemed to have some meaning[ ] and none should be assumed to be superfluous.” Austin-Harmes’ Mot. at 15 (quoting 13 Appleman
 
 Insurance Law and Practice
 
 § 7383 (1976) and citing H.R.S. § 431:10-237 (“Every insurance contract shah be construed according to the
 
 entirety of its terms
 
 and conditions as set forth in the policy----”) (emphasis added)).
 

 Yet Austin-Harmes also points out “[t]here is no yacht racing organization or association known [simply] as the YRU’ or the Yacht Racing Union.’ ” Austin-Harmes’ Mot. at 14. Accordingly equating “international YRU jury” with an “international jury” constituted under IYRU rules does not violate the maxim. Indeed if the phrase in the Policy were, as Austin-Harmes’ suggests, simply “international jury,” it is arguable there then would be no requirement that the jury be constituted in conformance with Appendix A5 of the IYRR — any arguably “international” jury, even one in violation of Appendix A5 (for instance, one with four judges from the United States and one from another country), might suffice. Rather than
 
 *788
 
 being superfluous, the addition of ‘YRU” thus arguably clarifies that the “international jury” contemplated is one as defined under' the IYRU rules. The Court accordingly finds Plaintiffs’ interpretation reasonable.
 
 [4]
 

 The Court now considers Austin-Harmes’ interpretation, which may be summarized as follows: (1) because there is no entity known as the “YRU,” the immediately preceding word “international” must be read to modify “YRU,” resulting in the term “IYRU,” the commonly understood abbreviation for the International Yacht Racing Union;
 
 [5]
 
 (2) “IYRU” then modifies “jury,” resulting in the term “IYRU jury;” (3) according to Austin-Harmes’ experts Kenneth Morrison and Cy Gillette, “the term TYRU jury
 
 [5]
 
 is a term regularly, customarily and uniformly used in the sport of yacht racing to describe the jury appointed by the IYRU itself, for an IYRU event;”
 
 [6]
 
 (4) the 1994 Kenwood Cup race was not an “IYRU event” because it was not organized by the IYRU;
 
 [7]
 
 (5) the 1994 Ken-wood Cup race jury was not an “IYRU jury” because it was not appointed by the IYRU;
 
 [8]
 
 (5) accordingly the 1994 Kenwood Cup race did not have an “international YRU jury.”
 

 In light of Plaintiffs’ failure to offer any evidence to rebut the averments of Morrison and Gillette to the effect that the term “IYRU jury” customarily is used in the sport of yacht racing to refer to a jury appointed
 
 *789
 
 by the IYRU in an event organized and conducted by the IYRU, the Court also finds that Austin-Harmes’ interpretation of “international YRU jury” in the Policy is reasonable.
 

 The Court accordingly finds the Policy exclusion at issue is ambiguous and resolves that ambiguity against Plaintiffs. As a result, the Court grants Austin-Harmes’ motion for summary judgment and denies Plaintiffs’.
 

 The Court also denies AustinHarmes’ request for attorneys’ fees and costs under H.R.S. § 431:10-242,
 
 [9]
 
 since it finds that even assuming Austin-Harmes, as a tort victim of an insured, may under some circumstances have a “legally protectable interest” in the insured’s policy,
 
 see, e.g., Bankers Trust Co. v. Old Republic Ins. Co.,
 
 959 F.2d 677, 682 (7th Cir.1992), he nevertheless is neither “the policy holder, the beneficiary under a policy, [n]or the person who has acquired the rights of the policy holder or beneficiary under the policy.” H.R.S. § 431.TO-242.
 
 [10]
 
 The relief Austin-Harmes seeks in this regard must be left to the legislature.
 

 CONCLUSION
 

 For the foregoing reasons, the Court GRANTS Austin-Harmes’ motion for summary judgment and DENIES Plaintiffs’. The Court DECLARES that the subject exclusion is inapplicable to the 1994 Kenwood Cup race at issue and that the collision at issue therefore is covered under the Policy. The Court DENIES Austin-Harmes’ request for attorneys’ fees and costs and SANCTIONS his counsel $50 for filing an untimely opposition.
 

 IT IS SO ORDERED.
 

 [1]
 

 . Plaintiffs are Frank Barber individually and as representative of certain underwriters at Lloyd’s subscribing to the Policy and Commercial Union Insurance Company PLC.
 

 [2]
 

 . Under "General Exclusions,” the Policy states:
 

 This policy does not cover: ...
 

 2. Any claims arising when the Boat or any substitute Boat is: ...
 

 e. Sailboat races where there is an
 
 international YRU jury.
 

 Plaintiffs' Mot., Exh. A at 6 (emphasis added).
 

 Although grammatically deficient, General Exclusion 2.e. will be read by the Court to exclude coverage where the boat is
 
 used in
 
 sailboat races where there is an “international YRU jury.” The parties do not dispute that PRIME TIME is covered by the Policy unless the 1994 Kenwood Cup race at issue had an "international YRU jury” under the meaning of General Exclusion 2.e.
 

 [3]
 

 . In their reply filed May 2, 1996, Plaintiffs request that Austin-Harmes’ opposition filed April 26, 1996 be stricken as untimely (it was due April 25, 1996). The Court will not strike the opposition but will SANCTION Austin-Harmes’ counsel $50 for the late filing. Failure to comply with the Local Rules is unfair to the opposing side and the Court and impedes the efficient administration of justice. If there is any objection to the sanction, counsel may write a letter to the Court.
 

 [4]
 

 . The Court notes also that Plaintiffs attempt to support their interpretation by citing endorsement E-4, which apparently offers additional coverage for "International Jury Regulated Sailboat Races.”
 
 See
 
 Plaintiffs’ Opp., Exh. A at 3. Plaintiffs however have submitted no evidence this endorsement was "attached to and made a part of the policy.” Haw.Rev.Stat. § 431:10-237 (“Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, restricted, or modified by any rider, endorsement or application
 
 attached to and made a part of the policy.")
 
 (emphasis added);
 
 see also
 
 Plaintiffs’ Mot., China Affid. at ¶ 3 ("Attached hereto at Exhibit ’A’ [Policy without any endorsements, blank or otherwise] is a true and correct copy of insurance policy number HI11-000023300-00[.]”).
 

 Plaintiffs moreover have presented no evidence indicating that endorsement E — 1 was expressly offered to Chatham or that its relationship to General Exclusion 2.e. was ever explained to Chatham. The Court agrees with AustinHarmes that it is a mystery why, if Plaintiffs intended endorsement E-4 to act in a complementary fashion to General Exclusion 2.e., they did not use the same language in the endorsement and the Policy.
 
 See Yamaguchi v. State Farm Mut. Automobile Ins. Co.,
 
 515 F.Supp. 186, 199 (D.Haw.1980) (”[I]t is very well settled that if an insurer wishes to limit its liability trader its policy, it has the duty to do[ ] so in language that is
 
 plain and clear
 
 to the lay purchaser of the policy. The rule is that all provisions, conditions or exceptions which in any way tend to limit or defeat liability under the policy should be construed most favorably to the insured.”) (emphasis added) (internal citations omitted).
 

 [5]
 

 . Austin-Harmes cites the maxim
 
 noscitur a sociis,
 
 which holds that "[t]he meaning of a word is or may be known from the accompanying words."
 
 Black’s Law Dictionary
 
 (6th ed. 1990);
 
 see also Wong Kam Wo v. Dulles,
 
 236 F.2d 622, 626 (9th Cir.1956) ("Under the principle of
 
 noscitur a sociis,
 
 the meaning of doubtful words in a statute may be determined by reference to their association with other associated words and phrases.”).
 

 [6]
 

 .
 
 See
 
 Austin-Harmes’ Reply, Second Morrison Affid. at ¶ 4; Second Gillette Affid. at ¶ 4. Morrison is the Executive Director of the Royal Hawaiian Ocean Racing Club and has been since the Club’s establishment in May 1985. He has been the Race Director for every Hawaii International Ocean Racing Series since its inception in 1978 and was the race director for the 1994 Kenwood Cup Hawaii International Ocean Racing Series. Austin-Harmes’ Mot., First Morrison Affid. at ¶ 1. Morrison was also a member of the IYRU Racing Rules Committee, Race Management Sub-Committee, from 1991-94, and has been certified as a Judge by the IYRU since 1990.
 
 Id.
 
 at ¶¶ 4-5.
 

 Gillette is the Commodore of the Royal Hawaiian Ocean Racing Club and was Chairman of the International Jury for the Kenwood Cup Hawaii International Ocean Racing Series for the years 1986, 1988, 1990, 1992 and 1994. AustinHarmes’ Mot., First Gillette Affid. at ¶ 1.
 

 [7]
 

 . According to Morrison, IYRU events, that is, events organized and conducted by the IYRU itself, include the IYRU Nations Cup, the Olympic Regatta, the IYRU World Team Racing Championship, the IYRU World Sailing Championship, the IYRU World Youth Sailing Championship, and the IYRU World Boardsailing Championship. Austin-Harmes’ Mot., First Morrison Affid. at ¶ 16;
 
 see also id.
 
 at ¶ 17 ("The Kenwood Cup is not, and has never been, an IYRU event.”).
 

 [8]
 

 .
 
 See
 
 Austin-Harmes’ Mot., First Morrison Affid. at ¶ 20 (“When a race is not organized and conducted exclusively by the IYRU, and thus is not an IYRU event, the IYRU lacks jurisdiction over the event and cannot possibly appoint an TYRUjuiy’____”).
 

 [9]
 

 . This section states:
 

 Where an insurer has contested its liability under a policy and is ordered by the courts to pay benefits under the policy, the policy holder, the beneficiary under a policy, or the person who has acquired the rights of the policy holder or beneficiary under the policy shall be awarded reasonable attorney’s fees and the costs of suit, in addition to the benefits under the policy.
 

 H.R.S. § 431:10-242.
 

 [10]
 

 . The Court notes that standing committee reports of the House and Senate state that § 431:10-242 (formerly § 431-455) allows recovery of attorneys’ fees and costs by "a person
 
 standing in place
 
 of either the policyholder or the beneficiary." House Journal of the Seventh Legislature State of Hawaii, Regular Session of 1974, Standing Committee Reports, SCRep. No. 694-74 on S.B. No. 887 (emphasis added); Senate Journal of the Seventh Legislature State of Hawaii, Regular Session of 1973, Standing Committee Reports, SCRep. 501 on S.B. No. 887 (emphasis added). The Court finds however that unlike, for example, a trustee in bankruptcy, Austin-Harmes does not "stand in place" of either file policyholder or the beneficiary under the policy.
 

 The Court also notes that an “Order Denying Defendant Liberty Mutual Insurance Company’s Motion to Review Clerk's Action in Taxing Costs and Attorney’s Fees and Allowing Attorney's Fees and Costs” of the First Circuit Court in
 
 Kaaiwela v. Lavatai,
 
 Civil No. 58127, 80-1 Hawaii Legal Reporter 800540 (filed November 30, 1979), appears to have allowed attorneys’ fees and costs to a tort claimant under § 431-455. The order however gives no reasons for its ruling.
 
 Id.
 
 at 800540-41. For instance, it is not clear if the court in
 
 Kaaiwela
 
 found that the tort claimant was a “beneficiaiy” or a "person standing in place of the beneficiary.” Plaintiffs’ memorandum in opposition in
 
 Kaaiwela
 
 argued that “[t]he Plaintiffs who were injured and sought benefits under Liberty Mutual’s policy are obviously the ‘beneficiaries.’ "
 
 See
 
 80-1 Hawaii Legal Reporter 800523 at 800525. This Court is not persuaded. The statute requires that one be not simply a “beneficiaiy" but "the beneficiaiy
 
 under the policy.”
 
 In any event, this Court, based on the language of § 431:10-242, declines to follow the decision of the court in
 
 Kaaiwela.